[Crim. No. 2154.  First Dist., Div. Two.—May 2, 1941.]

THE PEOPLE, Respondent, v. N. S. HOUSMAN, Appellant.

Leo R. Friedman, Nathan C. Coghlan and James C. Purcell for Appellant.

Earl Warren, Attorney-General, and David K. Lener, Deputy Attorney-General, for Respondent.

NOURSE, P. J.—Appellant was indicted, tried and convicted on two charges of perjury, two charges of offering false evidence and two charges of preparing false evidence.

On August 30, 1939, two complaints were filed in the municipal court of San Francisco, each charging the defendant with having violated section 1–d of the State Narcotic Act (Deering's Gen. Laws, Act No. 5323) which provided that any doctor authorized to issue prescriptions for narcotics must keep a record of the name and address of the person to whom issued, the date when issued, the character and quantity of the drug prescribed and the purpose for which such prescription was issued. These two cases were consolidated and tried together and resulted in verdicts finding the defendant not guilty. In the trial of those cases the state relied on the defendant's failure to keep a record of prescriptions issued to A. E. Black and A. R. Brandon. In his defense to the charges there made the defendant as a witness in his own behalf offered case cards showing prescriptions issued to the parties named, and testified that the entries on the cards were made at or about the time they bore date.

On September 17, 1939, the defendant was charged in the municipal court with thirty violations of section 1–d of the State Narcotic Act in his failure to keep records of prescriptions issued to Black and to Brandon. In the trial of this second municipal court action the defendant was found guilty upon three counts and not guilty upon twenty-seven.

On November 9, 1939, an indictment was filed in the superior court containing two counts charging the defendant with perjury committed in the first municipal court trial, one count relating to the Brandon cards and the other to the Black cards. Two counts of the indictment charged the de-

fendant with offering in evidence as true and genuine record cards relating to the prescriptions issued to Black and to the prescriptions issued to Brandon. Two other counts charged the defendant with having prepared false and ante-dated records, the first count relating to the Black prescriptions, the other relating to the Brandon prescriptions. As heretofore stated, the defendant was convicted on all six counts.

On this appeal the defendant attacks the sufficiency of the evidence, contends that there was a prior adjudication of the matters contained in the indictment, and assigns error in the admission of certain testimony and in the refusal to give certain requested instructions.

The attack upon the evidence is based upon the usual statement of the testimony in the light most favorable to the appellant. The state offered irrefutable evidence that the Black and Brandon cards were deliberately fabricated by appellant some time after August 30, 1939, after he had repeatedly stated to the narcotic officers that no such records were in existence and that he did not know that the law required him to keep such records. The state proved that counsel for the appellant in a civil action (but not the counsel appearing for him in this proceeding) procured from one of the narcotic officers a snap tally or list of prescriptions issued by the appellant for Black which list this officer had made from a large number of prescriptions on file with a certain drug store. It also proved that on August 30, 1939, the date upon which the two complaints in the first municipal court action were filed against appellant, the appellant went to the same drug store and made a similar list of prescriptions which he had issued to Brandon, but that on the same day he again stated to the narcotic officer that he had no records of prescriptions such as were required by the State Narcotic Act. It was the theory of the state in the trial upon this indictment that the case cards or records offered in evidence by the appellant in the first municipal court trial were fabricated by the appellant from these lists some time after the complaints in the municipal court were filed, and in support of this theory it was disclosed that in the preparation of the snap tally or list of Black prescriptions the narcotic officer made twenty-one errors, and that in the cards prepared by the appellant and offered by him in evidence the identical

errors appeared. The testimony offered by the appellant in explanation of these discrepancies and in general to the charges made in the indictment was such that the jury had no other course than to find him guilty as charged.

The appellant contends that the issue of the verity of the records was adjudicated in the former municipal court trial and that the state is therefore estopped from prosecution under the charges in the indictment. The respondent replies that the charges there made related to the defendant's failure to keep records required by the State Narcotic Act, and that in finding the defendant not guilty of those charges it was not necessary for the jury to pass upon the truth or falsity of his testimony; that the jury may have disbelieved the testimony of the narcotic officers and may have acquitted the defendant for that reason; that it may have believed that the defendant was unjustly prosecuted because of the pending civil litigation involving the same subject matter. The theory that when a jury acquits a defendant in a criminal proceeding it thereby finds to be true the testimony of all witnesses called upon his behalf is not supported by reason or the common knowledge of mankind.

Though there is some conflict in the authorities upon the question of whether the doctrine of *res judicata* applies in a criminal proceeding of this nature the great weight of authority is that it has no application. One of the leading cases adopting the majority view is *People* v. *Niles*, 300 Ill. 458 [133 N. E. 252, 37 A. L. R. 1284]. In that case the appellant had been indicted jointly with another for the larceny of and receiving as stolen property an automobile. The codefendant pleaded guilty and upon his favorable testimony and that of the appellant the latter was found not guilty. Thereafter he was indicted for perjury because of the testimony so given. On appeal the Supreme Court of Illinois said that the question presented for decision was: ''Can a person acquitted by a jury of an offense of which he denied his guilt as a witness in his own behalf be afterwards prosecuted for perjury predicated upon testimony given by him upon the former trial, where a conviction of the charge of perjury necessarily imports a contradiction of the verdict of not guilty in the former trial?'' In answering the question in the affirmative the court said: ''Justice cannot be administered through a system of courts unless there can be some

assurance that the finding of the court is based upon testimony truthfully given. Any rule which tends to encourage the giving of false testimony threatens the peaceable and commendable settlement of controversies by the courts. The general proposition that one can escape punishment for perjury because he succeeded in inducing a jury to credit his false testimony is supported neither by authority nor by reason. If he could, then it follows that the law encourages parties—particularly defendants in criminal cases—to perjure themselves. We must declare that the law is guilty of no such folly. An accused's immunity from punishment for crime must not be made to depend upon the accomplishment of his acquittal in one prosecution by committing the crime for which he claims immunity. It is furthermore the policy of the law that judicial proceedings and judgments shall be fair and free from fraud, and that litigants and parties be encouraged, when sworn as witnesses, to tell the truth, and that they be punished if they do not. The authorities seem now to be unanimous in holding that an acquittal of one charged with crime is no bar to a prosecution for perjury for false testimony given by him at the trial. (Citing numerous cases.)''

In *Jay* v. *State*, 15 Ala. App. 255 [37 So. 137, 139), the Alabama court clearly states the reason for the majority rule in the following language: ''The doctrine of *res judicata* springs out of and is founded upon the principle of estoppel. It rests upon the principle of public policy that there should be an end to litigation—the maxim is, '*Interest reipublicae ut sit finis litium.*' Keeping in view the basic principle and underlying reason—public policy—it is obvious that while public policy on the one hand demands an end of litigation, and hence puts forward the doctrine of *res judicata,* yet, on the other, it is manifest that every interest of public policy demands that perjury be not shielded by artificial refinements and narrow technicalities, for perjury strikes at the very administration of the law and holds the courts up to contempt if they allow the perjurer to go unwhipt of justice. In other words, while public policy on the one hand creates the doctrine of *res judicata,* it also, on the other, requires that perjurers be brought to trial. It would be a monstrous doctrine to hold that a person could go into a court of justice and by perjured testimony secure an acquittal, and because

acquitted he could not be tried for his perjury; this would be putting a premium upon perjury and allowing a scoundrel to take advantage of his own wrong. Public policy does not guaranty immunity to criminals, and that is just what we are asked to do in extending the doctrine of *res judicata* to perjury.''

It would serve no purpose to cite further cases in support of the majority rule or to attempt to analyze those cited by appellant from the minority. Reference may be had to 37 A. L. R. 1290 et seq.; 15 Am. Jur., p. 45.

For the reason that the judgments in the second municipal court trial were not prior adjudications of the issues here involved the trial court did not err in denying appellant's motion to exclude all evidence relating to the verity of the cards or case records nor in refusing to strike such evidence from the record, and no error occurred in the rejection of appellant's offer in evidence of the judgment roll, transcript of testimony, or the court's instructions to the jury in the two municipal court trials since all these documents were offered solely in support of appellant's plea of *res judicata* which was not sound. Appellant does not contend that any matter thus offered and rejected was material to any other item of his defense or that except as to his plea of *res judicata* he suffered any prejudice through the order rejecting his offer.

The appellant next complains that because of the repeal of the State Narcotic Act effective September 19, 1939, his trial in the municipal court occurring after that date was a nullity and that he could not therefore be tried for perjury committed during the course of the former trial. He bases his argument on the contention that when the legislature adopted the Health and Safety Code effective September 19, 1939 (Stats. 1939, p. 483), it failed to provide a saving clause covering offenses committed under the former act. In this the appellant is in error. Section 2 of the Health and Safety Code reads as follows: ''The provisions of this code in so far as they are substantially the same as existing statutory provisions relating to the same subject matter shall be construed as restatements and continuations, and not as new enactments.'' Section 4 reads as follows: ''Any action or proceeding commenced before this code takes effect, and any right accrued, is not affected by this code, but all procedure

thereafter taken therein shall conform to the provisions of this code as far as possible.'' If this language is insufficient to disclose the legislative intent to effect a mere codification and clarification of the existing statutes without affecting the rights and obligations under those statutes, that legislative intent must be inferred from the fact that in reference to the subject matter here involved the new statute was a mere restatement of the provisions of the former. This subject is fully discussed in the recent opinion of *Sobey* v. *Molony*, 40 Cal. App. (2d) 381 [104 Pac. (2d) 868], in which numerous cases are cited. But the appellant argues that section 4 of the Health and Safety Code is unconstitutional because perchance one might have violated the provisions of the State Narcotic Act prior to the effective date of the codifying act with no proceedings taken against him before that date, and hence the section would discriminate favorably to him and against those in the same position as to whom proceedings had been commenced before that date. We need not discuss this question in its constitutional phases as the section could be disregarded entirely and the same result would follow because of the settled rule that, independent of the saving clause, a person may lawfully be prosecuted under a re-enacted or codified statute for a crime committed prior to the date of the codification. (*Sobey* v. *Molony, supra.*)

Appellant complains of the admission in evidence of the so-called Madden list upon the ground that it was immaterial and not binding upon him. It was part of the state's case that this list had been prepared by Madden and other narcotic officers working under his direction from original prescriptions issued by appellant and on file by the drug store which had filled them. It is further contended that this list had been given to Mr. Taaffe as counsel for appellant on the representation that he desired it at the time in reference to a civil proceeding in which he represented this appellant. It is further contended this list reached the hands of appellant and that the case cards which he offered in evidence in the municipal court were made up from that list. It was a part of the state's case that these case cards were fabricated after the original complaint was filed, and in support of its proof the respondent emphasizes that the party who made up the case cards had followed the Madden list with all the twenty-one errors that Madden had made. The argument

that the list was given the appellant's counsel rather than to the appellant directly, and that this counsel testified that he did not hand the list to the appellant, is not persuasive. The jury had ample reason to infer that the case cards offered in evidence were prepared by the appellant with the aid of this list.

Appellant contends that the evidence was insufficient to prove the *corpus delicti* in support of any one of the six counts of the indictment. As to the two counts charging perjury it is said that the evidence failed to meet the requirements of section 1103a of the Penal Code requiring proof of perjury "by the testimony of two witnesses, or of one witness and corroborating circumstances." It seems to be the position of appellant that it was incumbent upon the state to produce two witnesses who would testify directly to the falsity of each card, and that the extra-judicial statements of the accused were not admissible for that purpose. Of course this is not the law. The rule applicable here is stated in *People* v. *McGee*, 103 Cal. App. 149, 150 [284 Pac. 229], as follows: "It is true that perjury must be proved by the testimony of two witnesses, or one witness and corroborating circumstances (Code Civ. Proc., sec. 1968; Pen. Code, sec. 1103a). This does not mean that it is necessary to produce someone who was present at the defendant's home on the morning of February 16, 1929, to testify that Meeks was not there at that time. It is, however, necessary to have positive testimony as to facts that are absolutely incompatible with the innocence of the accused. (*People* v. *Porter*, 104 Cal. 415 [38 Pac. 88]; 20 Cal. Jur., p. 1023.) Positive testimony of a state of facts contrary to that sworn to by the accused, or absolutely incompatible or physically inconsistent with his evidence, may be sufficient. (*People* v. *Chadwick*, 4 Cal. App. 63 [87 Pac. 384]; *People* v. *Casanova*, 54 Cal. App. 439 [202 Pac. 45, 47]; *People* v. *Follette*, 74 Cal. App. 178 [24 Pac. 502].)" (24 Cor. Jur., sec. 78, p. 804.)

As to the complaint that the evidence was insufficient to prove the *corpus delicti* involved in the other counts, it is not necessary that such proof be made before the extra-judicial statements of the appellant were heard, or that such evidence be taken in any particular order. (*People* v. *Wiezel*, 39 Cal. App. (2d) 657 [104 Pac. (2d) 70].)

There was no error in the refusal to give appellant's requested instruction No. 55. The instruction, as a whole, was an incorrect statement of the law because, as we have heretofore said, the extra-judicial statements of the accused were admissible to supplement the direct evidence of perjury. It was no duty of the court to modify the instruction to remove the parts erroneous. Appellant's requested instruction No. 45 was properly rejected as partly an incorrect statement of the law and partly without the issues. The material parts relating to the *quantum* of proof necessary in perjury cases, and to the value and weight of circumstantial evidence were fully covered in the instructions given.

Finally it is argued that the trial court erred in instructing the jury that the specifications of perjury set forth in counts one and two of the indictment were material to the issue being tried in the municipal court. The argument is based upon the same ground heretofore considered—that the municipal court was without jurisdiction to try the appellant because of the "repeal" of the State Narcotic Act. The argument falls for the same reasons heretofore given.

The judgment and orders denying motions for a new trial are affirmed.

Sturtevant, J., and Spence, J., concurred.

Appellant's petition for a hearing by the Supreme Court was denied May 29, 1941.