[Crim. No. 7619.   Second Dist., Div. Four.   Nov. 14, 1961.]

THE PEOPLE, Respondent, v. JAMES E. WILLIAMS, Appellant.

James E. Williams, in pro. per., for Appellant.

Stanley Mosk, Attorney General, William E. James, Assistant Attorney General, and Edmond B. Mamer, Deputy Attorney General, for Respondent.

BURKE, P. J.—In an information filed by the District Attorney of the County of Los Angeles, defendant was charged as follows: in Count I with a violation of section 11530 of the Health and Safety Code in that on or about November 1, 1960, he had a narcotic, marijuana, in his possession, and in Count II with a violation of section 11500 of such code in that on or about November 1, 1960, he had a narcotic, heroin, in his possession. The information further alleged that defendant had been previously convicted of three felonies, two of which dealt with narcotics.

Defendant pleaded not guilty and denied the prior convictions. Trial was by the court, trial by jury having been duly waived. Defendant was found guilty as charged. The three prior convictions were found to be true. Probation was denied. Defendant was sentenced to state prison for the term prescribed by law. Sentences were ordered to run consecutively.

Defendant prosecutes this appeal from the judgment and from the order denying his motion for a new trial, which motion and order are not reflected in the clerk's transcript.

Approximately in January of 1960, Officer John C. Hanks assigned to the Narcotics Division of the Los Angeles Police Department received information concerning defendant. The informant indicated that defendant was dealing in heroin in quarter, half and ounce lots. Officer Hanks also had an address pointed out, which was in the vicinity of 78th Street, where defendant was supposedly staying and had heroin. This informant had on two previous occasions given Officer Hanks information upon which he had acted and the result was two narcotic convictions.

In July of 1960 Officer Hanks received similar information from a second informant. At that time the officer had an address pointed out at 1151 East 27th Street as the place

where defendant was reported to live and possibly keep heroin. The officer had not previously received information from this particular informant although he knew her and considered her reliable.

After receiving this information, Officer Hanks watched those two addresses from time to time. On cross-examination Officer Hanks disclosed the names and last known addresses of both informants.

On November 1, 1960, Officer Hanks contacted a Mr. Monroe at his residence at 1551 East 46th Street. From Monroe's statements and the apparent hypodermic needle marks on his arms, Officer Hanks knew he was a user of heroin and suspected him of being a dealer therein.

After he concluded his conversation with Monroe, Officer Hanks watched his residence from a point where, in his opinion, Monroe could not observe him. At approximately 4:15 p. m. Monroe came out of his house, walked to the corner of Vernon and Ascot Streets and stood on the southeast corner. Officer Hanks followed him to that location, keeping him under surveillance. Monroe stood on that corner for approximately 45 minutes. It was an intersection where there was public transportation. During this time Monroe made no effort to board any of the transportation facilities which passed by.

After 45 minutes, a 1950 blue Dodge which defendant was driving pulled up to the corner and stopped. Officer Hanks had information that defendant drove a 1950 blue Dodge. At this time Monroe went over to this car, opened the door on the passenger's side and started to get in. Although Officer Hanks could not at this time personally identify the driver, he approached the automobile because he felt that a delivery of narcotics was taking place. When he arrived at the driver's side of the automobile, he was able to identify defendant. Officer Hanks knew what defendant looked like from having looked at mug shots, that is, photographs, of defendant.

As Officer Hanks arrived at the automobile, he saw both of defendant's hands resting on the steering wheel. He observed an object in defendant's left hand.

As the officer came up, he said, "Police Officers." At about the same time that Officer Hanks saw the object in defendant's hand, Officer Hanks drew his gun and told defendant to turn off the motor. Defendant turned the motor off and at that time quickly dropped his left hand out of Officer Hanks' sight down towards the floorboard of the car.

At this point Officer Hanks opened the door of the car and grabbed for defendant's left hand. Officer Hanks said, "Come on, Bloom, get out of the car." "Bloom" is a nickname of defendant, according to Officer Hanks. At that time defendant got his left hand free and there was a struggle. He threw an object from his left hand out into the street about a foot from the side of the automobile. He then got out of the car, still struggling. Officer Hanks estimated that they struggled for three or four minutes at which time defendant was subdued and handcuffed.

Officer Hanks observed where the object from defendant's left hand landed. It was picked up, prior to the cessation of the struggle, by his partner, Sergeant Grennan. The object retrieved by Sergeant Grennan was a torn piece of blue balloon containing some white powder. White powder was also scattered on the street. Sergeant Grennan placed this object retrieved by him in a paper bend-over that he made.

Defendant and the other two occupants of the car, Ethel Burrell and her daughter, were then transported to the Newton Street Police Station.

At the police station, defendant freely and voluntarily entered into a conversation with Officer Hanks. Officer Hanks asked defendant, "Is this all the junk [referring to the material retrieved by his partner from the street] you have, Bloom?" to which he answered, "Yes." Officer Hanks said, "How about your pad on 27th Street, do you have any more in there?" Defendant said, "Yes, I have one balloon there."

After defendant made this statement, Officer Hanks and his partner, with defendant, proceeded to the address at 1151 East 27th Street in Los Angeles. The officers searched that residence but found nothing. They then returned with defendant to the Newton Street Police Station. Officer Hanks then spoke to Ethel Burrell, one of the occupants of the car. She told the officers where she lived and gave them permission to go there and look.

Officer Hanks again spoke to defendant. Defendant entered into this conversation freely and voluntarily. Officer Hanks said, "Look, Bloom, we are going to shake down Ethel's pad, now, do you have any stuff in there?" He said, "I have about a half a piece down there, I will take you and show it to you."

After this second conversation with defendant, Officer Hanks, along with his partner, Sergeant Grennan, and two other police officers went to the Burrell address located at 9016 Figueroa. Upon arrival, Mrs. Burrell opened the front

door with a key, and they all entered. Officer Hanks said, "All right, Bloom, where is it?" Defendant said, "Come on and I will show you." He directed them to the bedroom closet and said, "It is on a shelf in that closet." They opened the door and he indicated a cardboard box on the shelf and said, "It is in there." The box was retrieved and defendant said, "It is in that." At that time Sergeant Grennan, in Officer Hanks' presence, picked up the package, opened it and found four balloon fragments containing a powdery substance.

After they found these balloons, the officers conducted a further search of the house. In the garage there was a large brown suitcase, inside of which were 18 wrapped bricks of a green, leafy material.

Upon their return to the police station, Officer Hanks had a further conversation with defendant in the presence of his partner, Sergeant Grennan. Defendant's statements were made freely and voluntarily.

In this conversation, defendant said that the "junk" was all he had and that he didn't have a "stash." He said that the "grass" in the suitcase was his, and that Ethel, referring to Ethel Burrell, didn't know anything about either the "grass" or the "junk." Defendant said he had set Mrs. Burrell up in that house in April of that year. He said there were supposed to be 18 kilos of marijuana in the suitcase, but he hadn't sold any as he was primarily dealing in heroin. If and when he sold it, he was to pay his connection $1,200 for it. Defendant stated that two days previously he had purchased 2 ounces of heroin from his connection, and what the police officers had retrieved was what he had left.

It was stipulated that a qualified expert forensic chemist, employed by the Los Angeles Police Department, would testify that the powder recovered from the street at the scene of the arrest of defendant and in the balloons was heroin and that the green leafy material in the "bricks" was marijuana.

Defendant contends that his arrest was unlawful because the arresting officers did not have reasonable cause to believe he had committed a felony. It is now settled law that reasonable cause may consist of information gained from others and is not limited to evidence that could be admissible at the trial on the issue of guilt. It may consist of information obtained from informants who are known to the officer to be reliable and whom the officer in good faith believes to be trustworthy, such as was done in the case before us. (*People* v. *Rixner*, 157 Cal.App.2d 387

851

[321 P.2d 91] ; *People* v. *Bates,* 163 Cal.App.2d 847 [330 P.2d 102] ; *People* v. *Baltazar,* 159 Cal.App.2d 595 [323 P.2d 1062].)

As stated in *Lorenzen* v. *Superior Court,* 150 Cal. App.2d 506 [310 P.2d 180], at page 510, the question of whether an informant possesses such reliability as to justify an arrest without a warrant in reliance on the information presents a factual question to be determined by the trial court in the exercise of a sound discretion.

In addition to the information obtained from the informants, Officer Hanks knew what defendant looked like from previously looking at his photographs and also the kind of car he was driving. He identified defendant upon arriving at the driver's side of the automobile. He believed, under the circumstances present at the time of the arrest described in detail above, that a delivery of narcotics was actually taking place.

The trial court, in the exercise of the sound discretion vested in it, properly found the officer's reliance on the information to be reasonable.

Defendant contends the evidence is insufficient to establish his possession of narcotics at Mrs. Burrell's address because the premises were not incident to the arrest, nor were they under defendant's control, and that his statements alone cannot be used to prove the corpus delicti.

Defendant cites *People* v. *Housman,* 44 Cal.App.2d 619 [112 P.2d 944], as authority for the general proposition that the corpus delicti must be established by proof independent of any confession or admission of the accused. However, as stated on page 627 of that case, ''. . . it is *not necessary* that such proof be made before the extra-judicial statements of the appellant were heard, or that such evidence be taken in any particular order. (*People* v. *Wiezel,* 39 Cal.App.2d 657 [104 P.2d 70].)'' (See also *People* v. *Wade,* 53 Cal.2d 322, 330 [1 Cal.Rptr. 683, 348 P.2d 116].) As to the order of proof see *People* v. *Gotham,* 185 Cal.App.2d 47, 52 [8 Cal.Rptr. 20].

The evidence need not indicate proof of possession at the very time of the arrest. (*People* v. *Blinks,* 158 Cal.App. 2d 264, 267 [322 P.2d 466].) Possession and knowledge may be proved circumstantially. Exclusive possession of the premises is not necessary nor is physical possession of the essence. (*People* v. *Blinks, supra,* at p. 267.)

In the case before us, certain heroin was in the immediate possession of defendant at the time of the arrest. He

had thrown it to the street during the struggle which ensued. As to this particular amount of heroin, the corpus delicti was clearly established without resorting to his subsequent admissions. Thereafter, the conversations with defendant took place, which we have already indicated, as a result of which the search was made of Mrs. Burrell's residence. While there defendant's actions constituted prima facie evidence of illegal possession of narcotics and when considered together with his statements constitute ample evidence that the heroin and marijuana at the Burrell address were in defendant's constructive possession and control.

Defendant contends that the subsequent general exploratory search and seizure of evidence without a warrant was illegal and the evidence inadmissible, referring no doubt to the search of the premises occupied by Ethel Burrell. A similar objection was made in *People* v. *Davis,* 48 Cal.2d 241 [309 P.2d 1], when the police officers returned to defendant Davis' trailer with his consent and located certain evidence at a place in the trailer to which he had directed them. Our Supreme Court stated (p. 249) : ''Having been made pursuant to the permission given the search was lawful and the evidence was properly admissible. (*People* v. *Burke,* 47 Cal.2d 45 [301 P.2d 241] ; *People* v. *Michael,* 45 Cal.2d 751, 753-754 [290 P.2d 852] ; *People* v. *Gorg,* 45 Cal.2d 776, 783 [291 P.2d 469] ; *People* v. *Stewart,* 144 Cal.App.2d 555 [301 P.2d 301] ; *People* v. *Lujan,* 141 Cal.App.2d 143 [296 P.2d 93].)'' (See also *People* v. *Ashcraft,* 138 Cal.App.2d 820, 828 [292 P.2d 676].)

In the instant case the search was made with the consent of both the defendant and Mrs. Burrell, the occupant of the house, and the evidence found on the premises was properly admissible.

Defendant contends that the searches and seizures were unreasonable and prohibited by the Fourth Amendment of the Constitution of the United States and by article I, section 19, of the Constitution of the State of California because defendant ''was forcibly removed from his automobile, mauled and searched without the officers having probable cause to arrest him.''

We have disposed of defendant's contention in regard to probable cause. The details as to the search have been stated above. We do not believe the force used by the officer in an attempt to prevent a disposal of the heroin and in subduing defendant exceeded that reasonably necessary to effect the arrest.

Defendant contends that the statements and admissions made by him were obtained as a result of coercion and intimidation and while he was suffering pain from injuries resulting from the struggle with the officer at the time of his arrest.

The record indicates a struggle of three or four minutes at the time of arrest. There is no indication of any injury or of any continuing pain or suffering having been sustained by defendant. The statements made by him were free and voluntary.

Defendant urges that there was psychological coercion by the officer's questioning of him, "Look, Bloom, we are going to shake down Ethel's pad, now, do you have any stuff in there?" This question, defendant urges, following the officer's use of force to effect the arrest, rendered defendant's statements inadmissible.

In *People* v. *Millum*, 42 Cal.2d 524 [267 P.2d 1039], two government narcotic agents were admitted into an apartment by a young lady. Defendant was in the bedroom making a telephone call. When he had finished, one of the agents stated that he had information that defendant was selling marijuana and was keeping some in his home. This was denied by defendant. Upon searching the premises, a man's shirt was found in the bedroom closet, in the pocket of which a marijuana cigarette and a number of defendant's papers were found. Upon being questioned, defendant admitted owning the shirt but denied any knowledge as to the contraband. Finally, defendant was told that they " 'were going to book [him] and the young lady.' " Whereupon, defendant said, with reference to the marijuana, " 'that it was all his and she had no knowledge of the marijuana being there.' " (P. 526.) On appeal, defendant contended that the purported confession was inadmissible because it was involuntary. The court said that this contention had no merit because defendant failed to make a timely objection, citing *People* v. *Hurst*, 36 Cal.App.2d 63, 64 [96 P.2d 1003]. The court went on to point out it is only where evidence of the attendant circumstances and methods of procurement of the confession discloses conduct which would make the use of the confession a denial of due process, that there is a constitutional proscription of state procedure; otherwise, a state procedure precluding the raising of such question for the first time on appeal prevails. (*People* v. *Millum*, 42 Cal.2d 524, 527 [267 P.2d 1039].)

In the instant case the records do not indicate that there was an objection at the trial that the extrajudicial statements of defendant were inadmissible because they were coerced. If there had been an objection, it is apparent the result would have been the same. We do not have the type of conduct on the part of the law enforcement officers in this case that was present in *People* v. *Berve,* 51 Cal.2d 286 [332 P.2d 97] ; *People* v. *Speaks,* 156 Cal.App.2d 25 [319 P.2d 709] ; and *Rogers* v. *Richmond,* 365 U.S. 534 [81 S.Ct. 735, 5 L.Ed.2d 760], decided March 20, 1961, and cited by defendant.

The judgment of conviction is affirmed, and the purported appeal from the nonexistent order denying a motion for a new trial is dismissed.

Jefferson, J., and Balthis, J., concurred.

A petition for a rehearing was denied December 1, 1961.