Me COMB, J.
I dissent. I would affirm the judgment for the reasons expressed by Mr. Justice Fourt in the opinion prepared by him for the Court of Appeal, Second Appellate District, Division One, and concurred in by Mr. Presiding Justice Wood and Justice Lillie, which is quoted in full below:
This is an appeal from a judgment of conviction of possessing a narcotic drug and from an order denying a motion for new trial.
In an information filed in Los Angeles County on July 2, 1965, defendant was charged with having possessed marijuana on June 13, 1965. It was further charged that defendant previously, on March 15, 1962, had been convicted of a violation of section 11530, Health and Safety Code, a felony. Defendant pleaded not guilty and denied the charged prior conviction. A jury trial was waived and defendant was found guilty as charged. The court found the charged prior to be true. Defendant was sentenced to the state prison. This appeal was timely filed.
A résumé of some of the facts is as follows: In early June of 1965, about a week prior to the arrest of defendant, Officer Smith of the Los Angeles Police Department received information from a person whose name he did not recall, and whom he had previously arrested (violation of parole) and from whom he never previously had received any information, that a man named Johnny lived in room 206, Harold Hotel, 323 Bast Fifth Street, that he worked with a confederate known as “Overalls,’’ that they sold marijuana in the Diamond Club at 223 Bast Fifth Street and that marijuana was kept in *848 the room inside a radio ease. Johnny was described as wearing a goatee, his hair was worn straight back and combed down; that he always was smoking a cigar, carried a razor and hung around the area of the hotel.
A few days later, and before the arrest of defendant, Officer Smith received information from a person known only as James. James described a man named Johnny, as a male Negro, 30 to 35 years of age, who had a goatee, smoked cigars, lived at the Harold Hotel at 323 Bast Fifth Street, and he, James, stated that he knew that Johnny sold marijuana and had heard that he kept it in his room. James twice previously had given police information which had resulted in arrests— once with reference to a grand theft auto ease and once with reference to a deserter from the Marine Corps.
On June 13, 1965, at about 4 p.m., Officers Smith and Watts went to 323 Bast Fifth Street where they saw defendant about three feet from the hotel doorway. He matched the description they had been given. He was squatting on the sidewalk in a small group in front of the hotel, apparently engaged in a dice game. As the officers approached the group dispersed and defendant gathered up some small objects from the sidewalk and put them in his pocket. Upon being asked, defendant gave the officers his name, whereupon he was arrested for gambling and for suspicion of narcotics possession. Defendant was told of his right to remain silent, his right to an attorney and was advised that anything he said could be used against him. A cursory search of defendant was made and a pair of dice, a room key and a razor were found. The officers asked defendant if there were narcotics in his hotel room and he replied that there were not. He was asked if he had any objections to their searching the room and defendant said he did not. Smith asked if he had lived previously in room 206 and defendant replied that he had, but that he had moved to room 204 a few days before.
The officers and defendant entered the hotel and went to room 204 on the second floor. Using defendant’s key they unlocked the door and went inside. On the floor near the window was a radio out of its case. Beside the radio was a case sitting against the wall. Smith, upon entering the room, walked to the ease, pulled it from the wall and saw two packages wrapped in newspaper inside the radio case. Smith removed the packages and before opening them placed them on a dresser top and asked defendant what they contained and defendant answered that they contained marijuana. *849 Smith opened up the packages; one contained 30 marijuana cigarettes, the other contained a bulk of marijuana.
Defendant testified that the officers asked him from whom he was obtaining the marijuana, and he replied that if he told them who it was, he would have no place to live or likely would be shot.
Appellant now asserts that the arrest, search and seizure were without probable cause, the search was not incidental to the arrest, was made without consent and without a warrant.
There is substantial evidence to support the judge’s finding of probable cause. The reliance upon the evidence from the informer was reasonable. (See People v. Prewitt, 52 Cal.2d 330, 337 [341 P.2d 1]; Willson v. Superior Court, 46 Cal.2d 291, 294-295 [294 P.2d 36]; People v. Melchor, 237 Cal.App. 2d 685, 688-689 [47 Cal.Rptr. 235].)
James was a reliable informant and his statements above might well have provided sufficient probable cause to support an arrest. (See People v. Prewitt, supra-, Willson v. Superior Court, supra; People v. Cedeno, 218 Cal.App.2d 213, 219-220 [32 Cal.Rptr. 246]; People v. Roland, 183 Cal.App.2d 780, 784 [6 Cal.Rptr. 895]; People v. Dewson, 150 Cal.App.2d 119, 128 [310 P.2d 162].) James told the officers that of his own knowledge the defendant was selling marijuana.
The unnamed informant gave information about defendant’s description and the exact location at which the marijuana was kept, the name of the confederate and details, all of which indicated a personal knowledge of defendant and his activities. (See Draper v. United States, 358 U.S. 307 [3 L.Ed.2d 327, 79 S.Ct. 329].) In other words, considering all of the information the police had, it was perfectly reasonable for the police to act as they did. Furthermore, defendant consented to the search. The fact that defendant was under arrest does not necessarily mean that his consent was not wholly voluntary. (See People v. Cockrell, 63 Cal.2d 659, 665 [47 Cal.Rptr. 788, 408 P.2d 116]; People v. Williams, 196 Cal.App.2d 845, 852 [16 Cal.Rptr. 842].)