**Jeffrey A. LENN, Appellant (Defendant Below),**

v.

**STATE of Indiana, Appellee (Plaintiff Below).**

No. 1081S286.

Supreme Court of Indiana.

July 19, 1982.

Malcolm S. Montgomery, Evansville, for appellant.

Linley E. Pearson, Atty. Gen., Michael A. Minglin, Deputy Atty. Gen., Indianapolis, for appellee.

PRENTICE, Justice.

Defendant (Appellant) was convicted of Armed Robbery, Ind.Code § 35–42–5–1 (Burns 1979), and two counts of Attempted Voluntary Manslaughter, Ind.Code § 35–41–5–1; § 35–42–1–3 (Burns 1979), and was sentenced to a total of twenty-six (26) years imprisonment. This direct appeal presents two issues:

(1) Whether the evidence is sufficient to support the convictions for Attempted Voluntary Manslaughter.

(2) Whether the trial court properly sentenced the defendant.

\* \* \*

## ISSUE I

The evidence most favorable to the State reveals that on the evening of December 13, 1980, Defendant robbed the Key Market in Evansville. After Defendant obtained money from a cashier and the owner at gunpoint he fled. The owner, Eugene Young, gave chase. Bryon Klaser, a uniformed sheriff's deputy who was driving into the market's parking lot, also pursued the defendant on foot, after an employee yelled to him to stop the defendant, who was running across the lot. During the chase the participants fired several gunshots.

Defendant contends that there was not sufficient evidence from which the jury could find that he had the requisite intent to commit Manslaughter, *Anthony v. State*, (1980) Ind., 409 N.E.2d 632, 636, when he fired the shots.

Klaser testified that the first time Defendant fired, he was twenty-five (25) to thirty (30) feet away, but he could not say for certain that Defendant was aiming at him. The chase continued and Klaser again yelled at Defendant to stop. Defendant turned and fired a second shot from forty (40) to fifty (50) feet. Defendant was "clearly visible," and Klaser stated that he could see that Defendant was aiming at him. As the shot ricocheted five (5) to six (6) feet to Klaser's right, sparks flared on the sidewalk. Before Klaser apprehended Defendant, Defendant fired a third shot at him from a distance of twenty (20) to twenty-five (25) feet. It landed in gravel five (5) to ten (10) feet in front of Klaser, who returned the fire. As Klaser caught up with Defendant, Defendant might have been about to fire a fourth shot:

"A. At that time, when I cam (sic) around, he had kinda reared up on his back and had his gun out. As far as I could see, the gun was cocked at the time. I put my gun toward his chest and I told him if he didn't drop the gun, he was dead." R. at 76.

The chase occurred in streets, between houses, and in alleys in the vicinity of the market. Eugene Young pursued Defendant by a different route than did Klaser. Young heard "a gun fire" from the direction in which Defendant and Klaser had run. He headed in that direction and wit-

nessed the Defendant fire two (2) shots at Klaser and then run down an alley. Young ran to the other side of the alley. Defendant emerged from between two houses and was about two hundred (200) feet from Young:

"A. As I hollered 'halt', the man turned around and aimed the gun at uh me and he fired two shots.

\* \* \* \* \* \*

"Q. Could you tell if he was aiming at you?
"A. Yes, sir, he was." (R. at 84).

Young testified that the street was "well-lighted" and that he returned the fire with two shots.

■ Defendant argues that the closest shot was four (4) to six (6) feet from any of the victims, that no one was injured, that Klaser stated that he was not sure that the first shot was fired at him, and that Defendant was only trying to escape. These points address the weight of the evidence; not its sufficiency.

"Upon a review for sufficient evidence, this Court will look only to the evidence most favorable to the State and all reasonable inferences to be drawn therefrom. If the existence of each element of the crime charged may be found therefrom, the verdict will not be disturbed. (citation omitted). In such a review, we will not weigh conflicting evidence nor will we judge the credibility of the witnesses, (citation omitted)." *Loyd v. State*, (1980) Ind., 398 N.E.2d 1260, 1264, *cert. denied*, (1980) 449 U.S. 881, 101 S.Ct. 231, 66 L.Ed.2d 105.

■ In *Spivey v. State*, (1982) Ind., 436 N.E.2d 61 we upheld a conviction for Attempted Murder where the employee at a service station testified that Defendant, in flight from Armed Robbery, turned and pointed a gun at him, and the employee heard a shot fired shortly thereafter.

"Defendant claims that he intended only to scare the employees when he fired the shot from his revolver. However, the discharging of the revolver by Defendant is substantial evidence from which the trier of fact could infer, beyond a reasonable doubt, that he intended to kill them." At 63.

In a similar case, *Williams v. State*, (1979) Ind., 395 N.E.2d 239, 244, we upheld a conviction for Attempted Murder where Defendant, fleeing from a Bank Robbery, fired at his pursuer. Under these decisions the testimony of Klaser and Young is sufficient to sustain Defendant's convictions for Attempted Voluntary Manslaughter.

## ISSUE II

The trial court sentenced Defendant to a total of twenty-six (26) years imprisonment: Count I, Armed Robbery, thirteen (13) years; Count II, Attempted Voluntary Manslaughter, thirteen (13) years; Count III, Attempted Voluntary Manslaughter, thirteen (13) years; Count II to be served consecutive to Count I, and Count III to be served concurrent with Count I.

The record contains only an order book entry of a sentencing on May 27, 1981 wherein the trial court stated its reasons for the sentence:

"Court finds the following Aggravating Circumstances. 1. Prior record. 2. Court feels that the sentence of 26 years is necessary for the rehabilitation and any lesser sentence would negate the seriousness of the crime. (R. at 55).

The entry also states that a Pre-sentence Investigation Report, which we do not find in the record, was filed.

Citing *Abercrombie v. State*, (1981) Ind., 417 N.E.2d 316, 320, Defendant contends that the "sentence must be supported by specific and detailed reasons."

In *Kern v. State*, (1981) Ind., 426 N.E.2d 385 we stated:

"When sentencing felons, trial courts must strictly adhere to the dictates of Ind.Code § 35-4.1-4-3 (35-50-1A-3) (Burns 1979). The statute requires the court to conduct a hearing into the facts and circumstances relevant to a sentence and to provide a written report detailing the reasons for the selection of a sentence where aggravating or mitigating circumstances are present. As we have recently

detailed in *Page v. State*, (1981) (review after remand) Ind., 424 N.E.2d 1021, a judge must articulate his mental processes whereby sentencing conclusions are reached." *Id.* at 388.

■ Defendant was convicted of three (3) Class B Felonies, which carry a presumptive sentence of ten (10) years imprisonment. Ind.Code § 35–50–2–5 (Burns 1979). The record at bar contains less of the trial court's rationale for enhancing the presumptive sentence than was contained in the record in *Kern* where we remanded the case. Additionally, the record contains no statement of the trial court's reasons for imposing a consecutive term of imprisonment upon Count II as required by *Richardson v. State*, (1981) Ind., 429 N.E.2d 229, 231–32. These deficiencies compel us to remand the case to the trial court to state its reasons, in conformity with *Page v. State, supra,* for enhancing the presumptive sentence and for imposing a consecutive term of imprisonment, or alternatively, to modify the sentence. In all other respects the judgment of the trial court is affirmed.

GIVAN, C. J., and DeBRULER, HUNTER and PIVARNIK, JJ., concur.