Rick J. WARTHAN, Appellant (Defendant Below),

v.

STATE of Indiana, Appellee (Plaintiff Below).

No. 981S249.

Supreme Court of Indiana.

Oct. 13, 1982.

James H. Voyles, Ober, Symmes, Cardwell, Voyles & Zahn, J. J. Paul, III, Indianapolis, for appellant.

Linley E. Pearson, Atty. Gen. of Indiana, Michael Gene Worden, Deputy Atty. Gen., Indianapolis, for appellee.

PRENTICE, Justice.

Defendant (Appellant) after trial by jury was convicted of Conspiracy to Deliver LSD, Ind.Code § 35–41–5–2; 35–48–4–2(1) (Burns 1979) and Dealing in LSD, Ind.Code § 35–48–4–2(2) (Burns 1979), and sentenced to twenty (20) years imprisonment and a fine of ten thousand dollars ($10,000) upon each count, sentences to run concurrently. This direct appeal presents the following issues:

(1) Whether the conspiracy conviction, assertedly based upon perjured testimony, violates *fundamental* due process.[1]

(2) Whether the evidence is sufficient to sustain the convictions.

(3) Whether the trial court erred in sentencing the defendant.

  *   *   *   *   *   *

## ISSUE I

■ Defendant contends that an undercover police officer perjured himself at the trial held March 2nd and 3rd, 1981. On February 23, 1981, the State furnished Defendant a two page statement made by Deputy Middleton of the Williams County, Ohio Sheriff's office and dated June 5, 1979.

At trial, Middleton related the details of the conspiracy. On June 3, 1979, one Ash, a co-defendant, telephoned Defendant and spoke with him for a few minutes about the availability and price of LSD. Ash gave the phone to Middleton who negotiated the transaction. They agreed to meet on Tuesday, June 5, 1979, at Defendant's residence in Elkhart, where Middleton would buy fifteen thousand (15,000) unit doses of LSD for eleven thousand dollars ($11,000). As we explain in Issue II, below, the purported sale was never completed.

At trial Ash related a similar version of the events except that he stated, on cross-examination, that Middleton, who was "standing right next to me" on June 3, 1979, when he, Ash, telephoned Defendant, never spoke directly to Defendant.

Middleton's pre-trial statement of June 5, 1979, contains the following:

"* * * We started winding up our investigation in Williams County and the decision was made to contact Ash and set up a deal with the supplier. I called Ash on Sunday June 3rd, 1979 and told him that I wanted from 15,000 to 30,000 hits of LSD if the man in Elkhart could get it for me. It was set up for him to call me at 1:00 PM Monday 6/4/79 if the deal was set up but he didn't call, me, he did call me at 6:00 PM and leave a message since I wasn't around. I went to Bryan, Ohio on Monday evening and met with Ash and he told me the deal was set up in Elkhart that the man was going to make a trip and that he was going to pick up 30,000 hits of LSD and that 15,000 would be for me and that he was going to keep the other 15,000 for himself. When I was talking to him he quoted the price of $11,000.00 for the 15,000 hits. Arrangements were made to leave for Elkhart at 5:00 PM Tuesday 6/5/79. * * *." R. at 200.

Although Defendant possessed Middleton's statement prior to trial, he did not attempt to impeach Middleton with the statement, which is not necessarily incon-

---

1. This issue is phrased in terms of fundamental due process ostensibly because defendant did not raise the claim in his Motion to Correct Errors.

sistent with his in-court testimony. It is possible that Middleton spoke with both Ash and Defendant by telephone on June 3, 1979, though Ash's testimony was to the contrary. Consequently, Middleton's out of court statement, if true, tends to corroborate Ash's testimony, which corroboration might reflect unfavorably upon Middleton's in-court testimony in the eyes of the jury. However, Defendant's failure to attempt to bring the statement into evidence by way of impeaching Middleton places him in a situation similar to a defendant in possession of evidence, who fails to present the evidence at trial and who cannot later use such evidence as a basis for a new trial following an unfavorable verdict. *Fleener v. State,* (1980) Ind., 412 N.E.2d 778, 782; *Riddle v. State,* (1980) Ind., 402 N.E.2d 958, 961; *DeShone v. State,* (1934) 207 Ind. 380, 386, 193 N.E. 223, 225.

Additionally, at best the record contains a contradiction between two witnesses; it does not contain any evidence demonstrating that Middleton knew or believed either his pre-trial statement or his in-court testimony to be false. Ind.Code § 35–44–2–1 (Burns 1979) (conduct giving rise to criminal liability for perjury); *See Pendleton v. State,* (1959) 239 Ind. 341, 344, 156 N.E.2d 782, 783. We find no merit in Defendant's contention.

### ISSUE II

Defendant next challenges the sufficiency of the evidence to sustain either conviction.

With respect to Count I, the conspiracy conviction, he notes the perjury of Middleton and asks us to consider its effect upon the rest of his testimony. We have found no perjury, and there is no other basis presented for the challenge to the conspiracy conviction. *See White v. State,* (1981) Ind., 425 N.E.2d 95, 97; *Fleener v. State, supra.*

With respect to the Dealing conviction (Possession with Intent to Sell), Defendant contends that the element of possession of LSD was not proven.

The evidence most favorable to the State reveals that after the agreement was reached, Ash and Defendant went to the chosen meeting spot, a restaurant parking lot, in an automobile. Middleton entered the back seat and the following occurred:

"A. I asked Mr. Warthan and Mr. Ash if they had the LSD. Mr. Ash looked at Mr. Warthan and said, 'do we?' Mr. Warthan stated, 'yes, we have it.' Then they asked me if I had the money, and I stated, 'yes, I have the money.' I asked Mr. Ash if the LSD was the green blotter type that we had discussed previously and Mr. Warthan stated that it was the same green blotter type that we had discussed. I then asked Mr. Warthan if he had it at his house or if he had it with him and he said it's here and then patted a small, approximately eight by ten pouch, leather brief case type thing and said it's here, and at that time, I seen some green paper, which looked to my knowledge and experience, to be the same type that the LSD would be printed upon; approximately sixteenth of an inch by three inches was sticking out of the corner of the briefcase." R. at 245.

The transaction was never completed. The principals drove around Elkhart making several stops and telephone calls. At the last stop Ash suggested that Middleton call his "money man" to pick them up at McDonald's. Middleton agreed and went to make the call. When he returned, Defendant and Ash were gone, and none of the alleged contraband was recovered for chemical analysis.

█ Even though contraband is not recovered, the State may prove Defendant's possession of LSD by circumstantial evidence, *e.g. Pettit v. State,* (1972) 258 Ind. 409, 281 N.E.2d 807; *Locklayer v. State,* (1974) 162 Ind.App. 64, 75, 317 N.E.2d 868, 874; however, Middleton's testimony (quoted above), the only evidence upon the element of possession, is not probative evidence from which the element may be found.

In *Slettvet v. State,* (1972) 258 Ind. 312, 315, 280 N.E.2d 806, 808, a unanimous Court reversed a conviction for possession of LSD stating, "LSD is a colorless, tasteless, and odorless substance (see 22 A.L.R.3d 1326 n. 1) so that none of these characteristics can be a basis for identifying the substance." A lay witness had testified about the defendant's behavior after he consumed pills referred to by hearsay evidence as "purple haze acid." The witness had not actually seen the Defendant, her husband, take the pills. We stated that, "Unlike drunkenness caused by alcohol, as to which a layman can form an opinion, we cannot say that the reactions to LSD are within the knowledge of the general public. It can be nothing more than conjecture by the jury that the actions of the witness' husband were the result of consumption of a dangerous drug." *Id.*

Given the physical characteristics of LSD, it would be impossible, even for an expert witness, to conclude that the green paper he saw contained a colorless, tasteless, and odorless substance. In addition Middleton provided no testimony as to what distinguished the small portion of green blotter paper that he saw from any other blotter paper. *See Copeland v. State,* (1982) Ind. App., 430 N.E.2d 393, 396. Under the circumstances, Middleton's conclusion that LSD was on the green paper could only have been drawn from Defendant's statements. These statements may be treated as circumstantial admissions. "Extra judicial admissions of a defendant will not be admitted in[to] evidence and a conviction will not be upheld until and unless the *corpus delicti* has been established by clear probative proof independent of the admissions." *Walker v. State,* (1968) 249 Ind. 551, 559, 233 N.E.2d 483, 488 (cases cited therein). Middleton's testimony, revealing Defendant's admissions, is the only evidence of the corpus delicti of the offense, Dealing in a Controlled Substance, LSD, Ind.Code § 35–48–4–2(2) (Burns 1979). This statute penalizes the actual possession of contraband. Under the decisions of Indiana courts, a Defendant's extrajudicial statement of possession of contraband, without more, does not establish the corpus delicti, i.e., that he actually possessed the contraband. The reason for this seemingly enigmatic rule is that the Legislature intended to punish the act of possession of contraband, not the act of making an extrajudical statement acknowledging such possession. *See Pryor v. State,* (1972) 260 Ind. 408, 413, 296 N.E.2d 125, 127. An examination of the precedents illustrates the point.

In *Thorne v. State,* (1973) 260 Ind. 70, 72–73, 292 N.E.2d 607, 609 we affirmed a conviction for possession of LSD stating:

"In the case at bar, no drugs were seized. The main evidence in the case comes from the appellant's confession and the testimony of appellant's girlfriend to whom appellant had given some pills. In his statement, appellant admitted to the extensive use of many drugs and to possession of 'acid' which was established to mean LSD. Appellant also admitted that he gave LSD to his girlfriend on three occasions. Appellant's girlfriend testified that appellant gave her some small round purplish-red colored tablets which he told her were LSD. She stated that when she took the pills she experienced hallucinations, her vision became distorted in color and shape, and that both colors and sound were distorted and amplified. The witness had taken LSD on previous occasions but nothing in the record indicates the extent of her prior experience. Although circumstantial, the evidence appears sufficient to prove the substance in question was LSD."

The Court refers to the evidence as circumstantial; however, a confession is direct evidence, but not admissible without proof of the corpus delicti of the charged offense. The testimony of the girlfriend furnished circumstantial evidence of the corpus delicti, possession of LSD, and thus gave admissibility and probative value to the defendant's confession. Our Court of Appeals has correctly extended this reasoning to statements made by a Defendant at the time of an alleged sale:

"In the case at bar, Prather admitted selling LSD to Dausch. Dausch testified that Prather told him at the time of the sale that the pills contained LSD. Dausch testified that the pills induced hallucinations, caused him to hear 'all kinds of weird noises,' made stationary objects appear to be moving, and rapidly increased his pulse.

"*We hold that the above evidence, although circumstantial in nature, is sufficient to identify the pills as LSD when coupled with Prather's admission.*" Prather v. State, (1973) 158 Ind.App. 61, 67–68, 301 N.E.2d 667, 671. (emphasis added).

■ It might be argued that, inasmuch as Defendant was allegedly possessing LSD when he said, "yes, we have it.", this statement alone is so integrally a part of the criminal transaction as to provide adequate evidence of the corpus delicti of possession. We recognize that under certain circumstances the accused's statements, other than an admission or confession, may constitute the acts required to sustain a conviction. In *Commonwealth v. Finnegan,* (1980) 280 Pa.Super. 584, 421 A.2d 1086, Defendant was convicted of one count of promoting prostitution solely upon the basis of telephone conversations with an undercover state trooper. Defendant contended that the trial court had erred in allowing the trooper to relate his statements without first requiring independent proof of the corpus delicti of the crime of promoting prostitution. The court ruled that independent evidence of the corpus delicti was not necessary because Defendant's statements were not a confession. While the court did not explicitly so rule, it is apparent from the facts of the case that Defendant's statements themselves provided the corpus delicti of the act of "procuring a prostitute for a patron." 18 Pa.Cons.Stat.Ann. 5902(b)(5) (defining the offense of promoting prostitution).

2. We refer herein to extrajudicial statements made by an accused at a time when the alleged act of possession is still occurring. With respect to extrajudicial statements made by an accused who is no longer in possession of the contraband to which the statement relates, *e.g.*

■ Our research discloses, however, that when the charge is possession of a controlled substance, the courts require more than a Defendant's extrajudicial statement of identification of the substance to show that the substance possessed was indeed contraband.[2] We have already noted *Prather v. State, supra,* in which the Court of Appeals required additional evidence of the identity of the purported contraband, LSD, even though Defendant had identified the substance during the sale transaction. A similar case is *Filler v. State,* (1981) Ind. App., 421 N.E.2d 1146, 1148, in which the defendant challenged the reliability of the chemical tests performed upon a recovered substance. After finding the tests to be adequate, the court noted additional evidence of the substance's identity. Defendant had identified it during the sale *and* again at the trial when crediting the possession and sale to a third party.

On occasion the police may not recover contraband, which a Defendant directly tells them that he actually has. In *People v. Williams,* (1961) 196 Cal.App.2d 845, 16 Cal.Rptr. 842 the police arrested Defendant after an aborted sale transaction, where heroin was recovered. At the police station Defendant was asked if he had additional narcotics at his apartment and he stated that he did. The police searched the apartment in Defendant's presence and found no contraband. Thereafter the police told Defendant that they were going to search the apartment of a woman who had been present at the earlier aborted sale. Defendant admitted that he had narcotics at the woman's apartment and led the police to a cardboard box secreted upon a shelf in a bedroom closet. Subsequent chemical analysis disclosed that the white powdery substance in the box contained heroin. Clearly the corpus delicti of the charged offense, possession of heroin, was proven;

*Franklin v. State,* (1969) 8 Md.App. 134, 258 A.2d 767, *cert. denied,* (1970) 257 Md. 733, the law in Indiana is settled. The State must show the corpus delicti of the offense independently of the defendant's extrajudicial statement. *Thorne v. State, supra; Pettit v. State, supra.*

however, what if the box had been empty or the chemical analysis had revealed the powder to be an uncontrolled substance? Could the defendant, nevertheless, have been convicted of possession of heroin?

The circumstance of the recovered substance not being contraband occurred in *United States v. Oviedo,* (5th Cir. 1976) 525 F.2d 881. Defendant had sold what he represented to be heroin to an undercover agent. The substance was actually procaine hydrochloride, which reacts positively to a field test but is not a controlled substance. The Court found that Defendant could not have been charged with distribution of heroin, and apparently the government concurred, because it charged Defendant with *attempted* distribution of heroin. *Accord State v. Gillespie,* (1981) Ind.App., 428 N.E.2d 1338. The Court's discussion of the law of Attempts is not relevant to the case at bar inasmuch as Defendant was charged with and convicted of Dealing in LSD; however, *Oviedo* illustrates that the defendant's extrajudicial statement, made at the scene of the sale, is not, by itself, adequate to sustain a conviction for an offense of which possession is an element.

■ In the case at bar, the defendant's statement might well provide the necessary evidence of probative value to prove his intent to sell LSD, another element of the charged offense, but standing alone it does not show the act of possession of LSD. This point is illustrated in *People v. Brannon,* (1978) 59 Ill.App.3d 531, 16 Ill.Dec. 733, 375 N.E.2d 840 where defendant, convicted of delivery of LSD, argued the following:

"The defendant contends that the substance sold was not proved to be LSD, or any other controlled substance, beyond a reasonable doubt. He argues that the chemist's conclusion that the tablets contained LSD was without foundation because it was based on comparison with an unknown substance. Defendant also contends that his statement to the undercover agent that the tablets were LSD is insufficient to prove that the substance

was a controlled substance." *Id.,* at 532, 16 Ill.Dec. at 734, 375 N.E.2d at 841.

The court discussed only the first contention, finding the chemical tests to have been accurate and did not treat the second contention. However, the dissenting opinion disagreed with the finding of admissibility of the test results and stated that which the majority had implicitly recognized by not affirming the conviction solely upon Defendant's statement to the undercover officer:

"Without the evidence of the thin layer chromatography test, the evidence is insufficient to establish that the substance delivered was in fact a controlled substance." *Id.* at 535, 16 Ill.Dec. at 736, 375 N.E.2d at 843 (Moran, P. J., dissenting).

We reverse the judgment of the trial court upon Count II.[3]

ISSUE III

■ Appellant also claims the trial court improperly considered the seriousness of the crime as an aggravating circumstance to increase his sentence. He claims the seriousness of the offense was considered by the Legislature when it was classified as a Class B felony providing for a presumptive sentence of ten years. This Court addressed a similar claim regarding Robbery as a Class A felony in *McNew v. State,* (1979) Ind., 391 N.E.2d 607 at 611–12:

"When the statute indicates what factors are to be considered in determining what sentence to impose for a crime, the factors are to be considered as aggravating or mitigating circumstances, since Ind. Code § 35–50–2–4 allows no trial court discretion initially by providing that the sentence 'shall' be thirty years. Therefore, by the express language of West's Ann.Ind. § 35–4.1–4–7(a), the legislature intended that the nature and circumstances of the crime committed shall be considered as aggravating or mitigating circumstances, otherwise this subsection would have no meaning. Consequently

---

**3.** *See People v. Park,* (1978) 72 Ill.2d 203, 20 Ill.Dec. 586, 380 N.E.2d 795; *People v. Sanford,*

(1962) 24 Ill.2d 365, 181 N.E.2d 118; *State v. Hutton,* (1972) 7 Wash.App. 726, 502 P.2d 1037.

one cannot say that the particularly serious nature of defendant's crime was already legislated into the underlying thirty-year sentence."

■ Defendant's other contentions relate to the sufficiency of the statement of aggravating circumstances. He argues that the trial court did not specifically explain its conclusions that Defendant's acts posed a substantial threat of danger to others or that to impose any lesser sentence would depreciate the seriousness of the offense, citing *Gardner v. State,* (1979) Ind., 388 N.E.2d 513, 517. The trial court's statement of aggravating circumstances does not conform to that required by *Page v. State,* (1981) Ind., 424 N.E.2d 1021. *Lenn v. State,* (1982) Ind., 437 N.E.2d 56, 59; *Kern v. State,* (1981) Ind., 426 N.E.2d 385, 388. The trial judge's statement merely relates his conclusions about the appropriateness of an enhanced sentence and does not tell us or the defendant what the basis of the conclusions is. As in *Lenn* and *Kern* the trial court has failed to tell us specifically why a lesser sentence would depreciate the seriousness of the offense. We note that a factor which may have influenced the trial court's sentencing decision is that Defendant was convicted of more than one offense; however, upon remand, the trial court will be able to reconsider its reasons for the sentence in light of *Page v. State, supra,* and our finding of insufficient evidence to support the Dealing conviction.

The judgment of the trial court upon Count One is affirmed and the case is remanded to the trial court to state, specifically, its reasons for enhancing the basic sentence of ten (10) years or alternatively to modify the sentence. The judgment of the trial court upon Count Two is reversed.

DeBRULER and HUNTER, JJ., concur.

GIVAN, C. J., dissents with opinion in which PIVARNIK, J., concurs.

GIVAN, Chief Justice, dissenting.

I respectfully dissent from the majority opinion on this case. The majority has taken the position that the testimony of Officer Middleton that appellant stated to him he had in his possession the LSD ordered by Middleton was not sufficient evidence to establish the charge, in that, there was no independent evidence of the *corpus delicti.*

The majority opinion treats the statements of the appellant as though they were an extrajudicial confession. There is no question but what the authorities cited by the majority opinion are absolutely correct, in that, the State is required to prove *corpus delicti* by evidence independent of an extrajudicial confession.

However, in the case at bar we are not dealing with an extrajudicial confession, rather we are dealing with a statement made by the appellant as a part of the *res gestae* of the crime in question. In *Adams v. State,* (1974) 262 Ind. 220, 225, 314 N.E.2d 53, 56, in holding that statements made by the perpetrator of a robbery during the robbery were admissible, this Court stated:

"It is entirely proper for a witness who is describing the acts of the perpetrators of the crime to testify as to explanatory words uttered by the perpetrators of the crime which accompany and give character to the transaction. Such testimony is not considered hearsay, but is admitted as part of the *res gestae* of the alleged crime."

In *Brown v. State,* (1981) Ind., 417 N.E.2d 333, this Court stated:

"Furthermore, it is well established that happenings near in time and place which complete the story of the crime are admissible under the theory of *res gestae. Maldonado v. State,* (1976) 265 Ind. 492, 355 N.E.2d 843; *Tapp v. State,* (1980) Ind.App., 406 N.E.2d 296. The victim's testimony here supported her account that she was in fear for her life and was trying to gain defendant's trust so that he would release her. There was no error in the admission of this testimony." Supra at 337.

Appellant argues the evidence of possession of a controlled substance is insufficient to support the verdict of dealing in a controlled substance. This Court has held the

State may prove the identity of a substance by circumstantial evidence when no drugs or no expert testimony based upon chemical analysis is admitted into evidence. *Slettvet v. State,* (1972) 258 Ind. 312, 280 N.E.2d 806.

Although unlike *Slettvet* in that there was no testimony of a user or a person who smelled or observed the drug in the case at bar, we, nevertheless, have an affirmative statement by the appellant to Officer Middleton that the substance he had in a leather carrying case was, in fact, the LSD in the quantity ordered by the officer and packaged in the manner ordered, namely, placed on green paper. As appellant made these representations to the officer, the officer was able to see the paper and recognized it as a type of paper which is used for the transportation of LSD.

At the time these representations by the appellant were made, appellant, his co-defendant Ash and the officer were riding in appellant's automobile. Before the transaction was completed the engine on the automobile failed. After each of the persons involved attempted to start the car, the officer went to a telephone to call for assistance. During this period of time both appellant and Ash disappeared. Therefore, the transaction was not completed and the officer never obtained the LSD in order to make any laboratory tests. Thus, the only evidence that LSD was, in fact, present in the automobile was the direct representation by the appellant to Officer Middleton, plus the officer's testimony that the material appeared to be authentic as represented by the appellant. This evidence is sufficient to support the verdict of the jury that appellant was, in fact, dealing in LSD a Schedule 1 Controlled Substance.

In an analogous situation, this Court has held where a defendant perpetrates a felony while claiming to be armed, although the victim does not see the weapon, the proof by the State that the defendant made the allegation that he was carrying a weapon is sufficient to support the verdict of a jury that he, in fact, committed an armed felony. *Zollatz v. State,* (1980) Ind., 412 N.E.2d 1200; *Stowers v. State,* (1977) 266 Ind. 403, 363 N.E.2d 978.

I would, therefore, hold that the statements made by the appellant were part of the *res gestae* of the crime committed and that as such they are admissible to establish the facts stated therein and therefore constitute the circumstantial evidence sufficient to sustain the conviction under the authority of *Slettvet, supra.*

PIVARNIK, J., concurs in dissent.