Commonwealth *v.* Hicks, Appellant.

Argued September 13, 1966. Before ERVIN, P. J., WRIGHT, WATKINS, MONTGOMERY, JACOBS, HOFFMAN, and SPAULDING, JJ.

*Leonard Packel,* Assistant Defender, with him *Melvin Dildine,* Assistant Defender, and *Herman I. Pollock,* Defender, for appellant.

*Michael J. Rotko,* Assistant District Attorney, with him *John J. DiPaul* and *Alan J. Davis,* Assistant District Attorneys, *Richard A. Sprague,* First Assistant District Attorney, and *Arlen Specter,* District Attorney, for Commonwealth, appellee.

OPINION BY MONTGOMERY, J., November 17, 1966:

Appellant-defendant was tried and found guilty by the Honorable ROBERT W. TREMBATH without a jury, on charges of burglary, attempted burglary, and possession of burglary tools. His motions for a new trial and in arrest of judgment having been overruled sentences were imposed on the indictments charging burglary and possessing burglary tools with sentence being suspended on the charge of attempted burglary. The only issues before us are the legality of the actions of the police officer who apprehended the defendant, and the sufficiency of the evidence, particularly the evidence offered to prove the ownership of the buildings alleged to have been burglarized. The indictments named the tenants whose apartments were involved rather than the owners of the buildings. The buildings were identified as 1800 Waverly Street in which Barbara Poet, a Commonwealth witness, had her apartment, and 1634 Lombard Street in which William Lloyd, another Commonwealth witness, had his apartment, both buildings being in the City of Philadelphia.

Barbara Poet testified that she heard a scratching sound at her neighbor's apartment, and found defendant in the hallway, and that he claimed to be looking for one R. J. Reynolds. After defendant left the building she found wood chips on the floor and loose molding around her neighbor's door. The locks to the front

4

door of the apartment building and that of the neighbor's apartment appeared to have been tampered with. William Lloyd testified that he saw defendant in an adjoining building looking for someone, and that his apartment door had in fact been tampered with. Both witnesses were positive in their identification of defendant as the person they saw in their respective buildings.

Officer Closkey testified that after receiving a police report of a burglary at 1634 Lombard Street he stopped defendant whom he saw walking on the street a few (five) blocks from that apartment house. The tenants had described the intruder to the police as a negro with a brown coat and mustache. Officer Closkey also testified that the defendant, when stopped, wore a light colored coat and needed a shave, and that the reason for the stop was for the purpose of investigating the reported burglary. Incident to the stop Officer Closkey frisked defendant and found a penknife with a three inch blade. Defendant was then arrested and taken to 1634 Lombard Street for identification, and subsequently booked on the burglary charges. The knife was introduced as evidence, over objection, at the trial.

We shall first consider defendant's contention that the search which produced the penknife was not incident to a valid arrest and should have been excluded from the evidence at the trial. This case raises the interesting question of a police officer's right to stop and frisk a suspect for dangerous weapons. To what extent under the Fourth Amendment to the United States Constitution, if any, can a police officer stop, detain and frisk a defendant short of arrest?

The constitutional restrictions of the Fourth Amendment are against unreasonable searches, not against all searches. What is reasonable involves a balancing of interests between the security of public order by the

solution and prevention of crimes, and a person's immunity from police interference into his privacy. The states are not precluded from developing workable rules governing searches to meet the practical demands of effective criminal investigation and law enforcement if the state does not violate the constitutional standard of what is reasonable. *Ker v. California,* 374 U.S. 23, 83 S. Ct. 1623, 10 L. Ed. 2d 726 (1963). Pursuant to this mandate the Supreme Court of Pennsylvania had set forth the rule that when a thorough search is made of a person or his possessions pursuant to an arrest, the arrest must have been made with probable cause that the person arrested was committing, had committed, or was about to commit a crime. *Commonwealth v. Negri,* 414 Pa. 21, 198 A. 2d 595 (1964); *Commonwealth v. Bosurgi,* 411 Pa. 56, 190 A. 2d 304 (1963), cert. denied, 375 U.S. 910, 84 S. Ct. 204, 11 L. Ed. 2d 149.

Short of arrest or probable cause to arrest, however, there is a well recognized necessity of the police to stop, question, and even detain persons pursuant to the investigation of a crime which was or was about to be committed. This necessity is clearly demonstrated by crimes of this nature which are especially difficult to solve. We take it as well settled that there is nothing ipso facto unconstitutional in the brief detention of citizens under circumstances not justifying an arrest, for the purpose of limited inquiry in the course of police investigation. *Rios v. United States,* 364 U.S. 253, 80 S. Ct. 1431, 4 L. Ed. 2d 1688 (1960); *Busby v. United States,* 296 F. 2d 328 (9th Cir. 1961), cert denied, 369 U.S. 876, 82 S. Ct. 1147, 8 L. Ed. 2d 278. The case of *Henry v. United States,* 361 U.S. 98, 80 S. Ct. 168, 4 L. Ed. 2d 134 (1959), cannot be read as holding that every stopping and consequent restriction of freedom of movement is an arrest. It is the business of the police to prevent crime and the prompt inquiry

into suspicious or unusual street action is an indispensable police power. Police prearrest and detention is based on the reasonable suspicion that the defendant committed a crime, as distinguished from reasonable cause to believe or probable cause. It is a right recognized both at common law and under the decisional law of the various states. *State v. Terry,* 5 Ohio App. 2d 122, 214 N.E. 2d 114 (1966) ; *United States v. Thomas,* 250 F. Supp. 771 (S.D.N.Y. 1966). In justifying the policeman's right to question and detain it is the reasonableness of the officer's suspicion that is determinative, as measured against the place, time and events of the moment. The line between what is a reasonable suspicion to justify questioning and detention short of arrest and what is illegal police action resulting in the suppression of resultant evidence is difficult to define. What is a reasonable suspicion under the circumstances and whether there was a point at which detention was tantamount to arrest must be measured in each case by the balance between individual freedom and law enforcement.

Although Pennsylvania has no statutory law authorizing a police stop, detention and frisk short of arrest, we are of the opinion that the knife was admissible in evidence although not seized in a search incident to a valid arrest. We adopt the reasoning of such cases as *State v. Terry,* supra; *People v. Rivera,* 14 N.Y. 2d 441, 201 N.E. 2d 32 (1964), cert. denied. 379 U.S. 978, 85 S. Ct. 679, 13 L. Ed. 2d 568 (1965) ; *People v. Simon,* 45 Cal. 2d 645, 290 P. 2d 531 (1955).

The basis for a brief search or frisk of a person who has been lawfully detained for questioning short of arrest is based on the personal regard for safety of the police officer detaining the suspicious person. A search of this nature is the contact or patting down of the outer clothing by the sense of touch to detect a concealed weapon. This type of search is much less an in-

vasion of privacy than a full search of the person would be. We adopt the language in *People v. Rivera*, supra, perhaps the leading case on this subject, when it states, 14 N.Y. 2d 441 at 447: "And as the right to stop and inquire is to be justified for a cause less conclusive than that which would sustain an arrest, so the right to frisk may be justified as an incident to inquiry upon grounds of elemental safety and precaution which might not initially sustain a search." This is not to say that in every case the investigating policeman may automatically frisk a suspect for weapons. Such a frisk must be based on the reasonable belief by the policemen that safety so required. Such a search must also be limited to the person and his immediate surroundings, and only to the extent necessary to discover any dangerous weapons which may on that occasion be used against the officer. *State v. Terry*, supra; *People v. Peters*, 18 N.Y. 2d 238, 219 N.E. 2d 595 (1966); *People v. Rivera*, supra.

The evidence in this case is sufficient to show that the investigating officer had reason to suspect that defendant may have committed the robbery when he saw the defendant, fitting approximately the description given in the police broadcast, five blocks from the scene of the crime. These facts are sufficient to satisfy the standard of "reasonable suspicion" authorizing a temporary stop, investigation and frisk. *United States v. Thomas*, supra; *People v. Rivera*, supra.

The circumstantial evidence was sufficient to support the verdicts of guilty. Defendant was positively identified as being present in the apartment building without any acceptable reason for being there. Damage to the apartment locks had occurred within 45 minutes in one case, and 30 minutes in another. The circumstantial evidence to convict for burglary need only be such as to show guilt beyond a reasonable doubt. *Commonwealth v. Wentzel*, 360 Pa. 137, 61 A. 2d 309

(1948) ; *Commonwealth v. Libonati,* 346 Pa. 504, 31 A. 2d 95 (1943) ; *Commonwealth v. Gibson,* 201 Pa. Superior Ct. 573, 193 A. 2d 690 (1963).

As to the question of lack of proof of ownership, the purpose of such allegations in indictments is to inform an accused of the particular crime with which he is being charged so that he may not be subject to more than one prosecution for the same crime. *Seifried v. Commonwealth,* 101 Pa. 200 (1882) ; Act of March 31, 1860, P. L. 427, §11, 19 P.S. §261. In this case no objection was made to the indictments and defendant went to trial on the information contained in them, and by doing so he waived the right to question any insufficiencies therein. *Commonwealth v. Lingle,* 120 Pa. Superior Ct. 434, 182 A. 802 (1936).

In a prosecution for burglary the rule of evidence is stated in 12 C.J.S. Burglary §58 as follows: "It is necessary that the evidence shall show beyond a reasonable doubt that the premises were of such a character and were occupied in such a manner or for such a purpose as to be the subject of the offense charged, that the location of the structure broken and entered was such as to bring it within the definition of the crime, and that the ownership of the burglarized premises was such as the allegations and circumstances of the case require for a conviction, although proof of ownership may be immaterial where no question of identity is involved."

At the trial proof was offered that defendant had made an entrance into both buildings and that there had been a tampering with the outer or front door lock of the one, and with the locks on an apartment within each building. What we said in *Commonwealth v. Myers,* 131 Pa. Superior Ct. 258, 263, 200 A. 143, 145 (1938), we repeat here: "As the evidence was sufficient to show an attempt to break and enter the store, with an intent to steal, more specific proof of ownership

was not a fundamental requisite of Commonwealth's case."

Judgment of sentence affirmed.

———

DISSENTING OPINION BY HOFFMAN, J.:

I agree with the majority that a police officer may stop a person on the streets for brief questioning, if he "reasonably suspects" that that person has committed a felony. In addition, the officer may "pat down" the person stopped, if he believes himself in danger from a concealed deadly weapon.

However, the potential for abuse in the procedures approved today suggests that we should be especially circumspect in reviewing these cases. I cannot agree that the test of reasonable suspicion has been satisfied here.

When the defendant was stopped, he was not acting furtively or stealthily. He was simply walking on the street, some five blocks from the scene of the crime. He was carrying no packages and there were no bulges under his clothing.

Officer Closkey knew only that a burglary had been committed in the area by a Negro with a mustache, wearing a brown coat. The defendant did not have a mustache. He was wearing a light-colored coat. In short, the only point of correspondence in the two descriptions is that both men were Negroes.

The majority concedes that the line between illegal police action and detention on reasonable suspicion is difficult to define. However, reasonable suspicion cannot mean that the police may stop and search any person in the vicinity where a crime has been committed, *merely because he happens to be there.* The record in this case shows nothing more.

I would reverse and grant a new trial.