ROBERT LEE JOHNSON AND HAZEL BEATRICE MAGBEE *v.* STATE OF MARYLAND

[No. 325, Initial Term, 1967.]

*Decided October 31, 1967.*

The cause was argued before MURPHY, C. J., and ANDER-
SON, MORTON, ORTH, and THOMPSON, JJ.

*Stuart E. Hirsch,* with whom was *Nelson R. Kandel* on the
brief, for appellants.

*Thomas A. Garland, Assistant Attorney General,* with whom
were *Francis B. Burch, Attorney General, Charles E. Moylan,
Jr., State's Attorney for Baltimore City,* and *James B. Dudley,
Assistant State's Attorney for Baltimore City,* on the brief, for
appellee.

ORTH, J., delivered the opinion of the Court.

The appellants were convicted of violating the narcotic laws
in the Criminal Court of Baltimore, before Judge James K.
Cullen, presiding without a jury. Each was sentenced to im-
prisonment for a term of three years.

On this appeal the appellants contest the validity of the search
warrant. They concede that the facts stated in the application
for the warrant show probable cause but contend that those
facts were illegally obtained. The facts were obtained by a police
officer, inside a home with permission of the occupants, observ-
ing, with the aid of binoculars, activities occurring in a room in
a house about 150 feet away. The observations were made from
a window in the home in which the officer was located through
an unobstructed window in the house under surveillance. The
basis of the contention is that the use of the binoculars in such
a manner for such a purpose violated the constitutional rights
of the appellants.

The Supreme Court said in *Berger v. New York,* 388 U. S 41, 87 S. Ct. 1873 (1967) at 1880:

"It is now well settled that 'the Fourth Amendment's right of privacy has been declared enforceable against the States through the Due Process Clause of the Fourteenth' Amendment. *Mapp v. Ohio,* 367 U. S. 643, 655, 81 S. Ct. 1684, 1691, 6 L. Ed. 2d 1081 (1961). 'The security of one's privacy against arbitrary intrusion by the police—which is at the core of the Fourth Amendment — is basic to a free society.' *Wolf v. People of State of Colorado,* 338 U. S. 25, 27, 69 S. Ct. 1359, 1361, 93 L. Ed. 1782 (1949). And its 'fundamental protections * * * are guaranteed * * * against invasion by the States.' *Stanford v. State of Texas,* 379 U. S. 476, 481, 85 S. Ct. 506, 509, 13 L. Ed. 2d 431 (1965)."

The attention of the courts has become directed more and more to questions involving the individual's right of privacy by the development and refinement of means of communication, although the evils of eavesdropping were early recognized. "Eavesdroppers, or such as listen under walls or windows, or the eaves of a house, to harken after discourse and thereupon to frame slanderous and mischievous tales, are a common nuisance." *Hochheimer, Law of Crimes and Criminal Procedure,* 1st Ed., §740, p.452; *IV Blackstone, Commentaries,* §168. The telegraph provided a better method to "harken after discourse" by the surreptitious interception of messages. The telephone made it possible to eavesdrop by intercepting a telephone line and thus this method of "wiretapping" became a not uncommon practice as a commercial and police technique. The problem has become more acute by the development of sophisticated electronic devices. The use of these devices, commonly known as bugging, makes it possible to eavesdrop, as the Court said in *Berger, supra,* 87 S. Ct. at 1877, "on anyone in most any given situation," by devices placed within the premises monitored or by apparatus which is not necessary to place within the premises. The development and use of such devices have also caught the attention of law makers. In Maryland it is a misdemeanor

for any person (except as authorized) "to use any electronic device or other device or equipment of any type whatsoever in such manner as to overhear or record any part of the conversation or words spoken to or by any person in private conversation without the knowledge or consent, expressed or implied, of that other person." Md. Code, (1967 Repl. Vol.) Art. 27, §125A. Also, in this State, the interception of telephonic and telegraphic communications is prohibited (except as permitted by the Statute) and only evidence obtained by such means in conformity with the provisions of the statute is admissible in evidence, "and then only in a prosecution for the crime or crimes specified in the court order [authorizing such interception]." Violation of the statute is a misdemeanor. Md. Code, (1965 Repl. Vol.), Art. 35, §§92-99 inclusive. See *Robert v. State,* 220 Md. 159 and *Manger v. State,* 214 Md. 71. Up to this time, the problem of violation of privacy by visual means has not become as acute, since visual sensory aids apparently have not reached the advanced state of development of audio sensory aids.[1] Maryland has recognized the problem, by legislative enactment, only in its most fundamental aspect and has made it a misdemeanor for any person to "enter upon the land or premises of another for the purpose of invading the privacy of the occupants of any building or enclosure located thereon, by looking in any window, door or other aperture of such building or enclosure." Md. Code (1967 Repl. Vol.), Art. 27, §580.

The first wiretap case before the Supreme Court was *Olmstead v. United States,* 277 U. S. 438, 48 S. Ct. 564 (1928), in which it was held that the Constitution did not forbid the obtaining of evidence by wiretapping unless it involved unlawful entry into the house.[2] The first bugging case before that Court was *Goldman v. United States,* 316 U. S. 129, 62 S. Ct. 993 (1942). In that case, federal agents, while trespassers, in-

---

1. However, in *Berger v. New York, supra,* at 1877, the Court mentions that "a combination mirror transmitter has been developed which permits not only sight but voice transmission up to 300 feet."

2. In 1934 Congress prohibited the interception, without authorization, and the divulging or publishing of the contents of wiretaps. 48 Stat. 1103; 47 U. S. C. §605.

stalled a listening apparatus in the office of an alleged conspirator and lawfully obtained access to an adjoining office in which they planned to listen to the conversations through the apparatus. When they later attempted to use the apparatus it would not work. They had with them another device, a detectaphone having a receiver so delicate, as when placed against the partition wall, to pick up sound waves originating in the office under surveillance, and means for amplifying and hearing them. With this device they overheard conversations. The Court held that what was heard by the use of the detectaphone was not made illegal by physical trespass or unlawful entry and that the use of the device was not a violation of the Fourth Amendment. Whatever trespass was committed was connected with the installation of the listening apparatus in the office of the conspirator and the Court accepted the findings of the lower court that this trespass did not aid materially in the use of the detectaphone. In *Goldman,* the Court was unable to distinguish *Olmstead* and declined to overrule it. See also *On Lee v. United States,* 343 U. S. 747, 72 S. Ct. 967 (1952). In *Silverman v. United States,* 365 U. S. 505, 81 S. Ct. 679 (1961) the Court found that the eavesdropping there considered by it "was accomplished by means of an unauthorized physical penetration into the premises occupied by the petitioners", and thus conversations heard by that means violated the Fourth Amendment. The Court said in *Silverman,* 81 S. Ct. at 683 :

> "This Court has never held that a federal officer may without warrant and without consent *physically* entrench into a man's office or home, there secretly observe and listen, and relate at the man's subsequent criminal trial what was seen or heard." (emphasis supplied)

The Court affirmed *Goldman* by finding no occasion to re-examine it, but stated that it declined to go beyond it. In *Lopez v. United States,* 373 U. S. 427, 83 S. Ct. 1381 (1963) the Court confirmed that it had "in the past sustained instances of 'electronic eavesdropping' against constitutional challenge * * * It has been insisted only that the electronic device not be planted by an unlawful physical invasion of a constitutionally protected

area." 83 S. Ct. at 1387. The Maryland case law as to tangible evidence seized incident to an arrest made on the basis that the arresting officer observed a misdemeanor committed in his presence is consistent with the rationale of the Supreme Court cases above cited. If the observations were made while the officer was a trespasser, the arrest will not support the introduction of the evidence. *Dailey v. State,* 234 Md. 325; *Beale v. State,* 230 Md. 182. In *Griffin v. State,* 200 Md. 569, cert. den., 345 U. S. 907, 73 S. Ct. 647 the observations were made by an officer, not a trespasser, "by peaking through a side window" of a home. The evidence was there held admissible. We also note that Md. Code, (1967 Repl. Vol.), Art. 27, § 580, proscribing the invasion of privacy by looking into a window, door or aperture of any building or enclosure requires a trespass by entering "upon the land or premises of another" to effect that purpose.

If evidence of what was seen or heard is otherwise admissible, we think it clear that the determinant is whether such evidence was obtained by *physical* trespass or unlawful entry.[3] If, so, constitutional rights are violated, if not, constitutional rights are not violated.

We do not feel that *Berger v. New York, supra,* holding that a New York permissive eavesdrop statute permitted a trespassory invasion of the home, by general warrant, contrary to the command of the Fourth Amendment, compels a finding to the contrary, despite Mr. Justice Douglas' statement in his concurring opinion that *Berger* "overrules *sub silentio Olmstead v. United States,* 277 U. S. 438, 48 S. Ct. 564, 72 L. Ed. 944, and its offspring and brings wiretapping and other electronic eavesdropping fully within the purview of the Fourth Amendment." 87 S. Ct. at 1886. In the opinion of the Court in *Berger,* Mr. Justice Clark discussed *Olmstead* and "its offspring." Although he found it significant that in *Silverman v. United States, supra,* the Court held that its decision did "not turn upon the technicality of a trespass upon a party wall as a matter of local

---

**3.** *Warden v. Hayden,* 386 U. S. 903, 87 S. Ct. 1642 (1967) disposed of the contention that evidence obtained by electronic surveillance was inadmissible as a search for "mere evidence."

law," but based the decision upon the reality of an actual intrusion into a constitutionally protected area, (81 S. Ct. at 683), we cannot read into this nor can we reach, from the *Berger* opinion as a whole, the conclusion of Mr. Justice Douglas.

The police officer in the instant case was not physically trespassing on the premises under surveillance and there was no unauthorized physical penetration into the premises or actual intrusion into a constitutionally protected area. We find *Goldman v. United States, supra,* controlling, as we are unable to distinguish, with respect to the principle of law involved, between overhearing conversations with a detectaphone and observing activities with binoculars. We hold that what was seen by the police officer was not made inadmissible by trespass, unlawful entry or statutory prohibition, and that the use of the binoculars was not a violation of any constitutional rights of the appellants. By so holding, the observations of the police officer were proper to show probable cause for the issuance of the search warrant. Probable cause having been shown, the warrant was valid.

*Judgments affirmed.*