The **STATE OF TEXAS** et al., Appellants,

v.

Salvador **GONZALES**, Appellee.

No. 24715.

United States Court of Appeals
Fifth Circuit.

Jan. 15, 1968.

Robert E. Owen, Lonny F. Zwiener, Asst. Attys. Gen., Crawford C. Martin, Atty. Gen. of Texas, George M. Cowden, First Asst. Atty. Gen., A. J. Carubbi, Jr.,

**146**

Staff Legal Asst. Atty. Gen., R. L. Lattimore, Howard M. Fender, Asst. Attys. Gen., Austin, Tex., for appellants.

Joel Jay Finer, Stanford, Cal., for appellee.

Before JONES, WISDOM and THORNBERRY, Circuit Judges.

THORNBERRY, Circuit Judge:

This appeal from the granting of habeas relief to a state convict presents another opportunity for judicial construction of the fourth-amendment guarantee against unreasonable search and seizure. See generally, Landynski, Search and Seizure and the Supreme Court (1966). On June 27, 1964 at 8 P.M. Lieutenant Gann of the Austin Police Department summoned three other police officers to 206 Elkhart Street, Austin, Texas, and established a surveillance of the residence immediately to the north at 208 Elkhart Street. Their purpose was to ascertain if narcotics were being peddled and they intended to raid the house. Gonzales was a guest in the house. Lieutenant Gann had information that narcotics were being peddled there and that Louis Selvera, the occupant, had that day picked up a small package in the alley across the street and taken it inside the house. Further, Selvera had admitted to Gann two weeks before that he was a narcotics user. The officer's search warrant was admittedly invalid under Aguilar v. State of Texas, 1964, 378 U.S. 108, 84 S.Ct. 1509, 12 L.Ed.2d 723. However, the State contends that Gann established probable cause to arrest in another fashion and therefore did not have to depend on the validity of the search warrant.

These additional factors present the basis for the controverted issues on appeal. While the officers were watching the house, Gann saw Selvera pull into the driveway and enter the house. Gann waited about thirty minutes and then crossed the yard and peered through a window on the south side. Having seen nothing, he proceeded around the back yard to a window on the northwest side of the house. Peering through it, he observed what appeared to be three pairs of male legs under a table. He concluded that the men were either eating or capping heroin and returned to his partners next door. Another thirty minutes elapsed before Gann again crept across the yard to his viewing position. This time a gentle breeze parted the curtains and he could see a box marked "powdered sugar" and a gelatin capsule box on the table. He concluded that the men were indeed capping heroin and returned for his partners. The next trip was made by all the officers. Two of them hid in Selvera's garage while Gann and another returned to the window. This time Gann stood on a drainpipe and peered into the north window. He saw a woman entering the room and three men seated around a table with knives in their hands working with a white powder in a plate. When the woman approached the window, Gann ducked down, then climbed up again for a better look. He then returned to the garage and gathered his men for a raid on the house. The officers went to the west door, "hollered police and hit the door," breaking it down. After a short skirmish, they arrested Gonzales and the others. Heroin and narcotics paraphernalia were seized.

The district court granted Gonzales' application for writ of habeas corpus, reasoning that the conduct of the officers constituted an unreasonable search and seizure and thus that the evidence seized should have been excluded from the trial. The State has prosecuted this appeal on two grounds: That Gonzales lacks standing to question the validity of the search and seizure; and that the conduct of the officers was merely in investigatory procedure that uncovered additional information needed to formulate probable cause for appellee's arrest. *We affirm the district court.* The State's argument that Gonzales lacks standing to challenge the search and seizure deserves no discussion because it is clearly rejected by the decisions. See Jones v. United States,

1960, 362 U.S. 257, 80 S.Ct. 725, 4 L.Ed. 2d 697; Monnette v. United States, 5th Cir. 1962, 299 F.2d 847, 849.

The issue of whether the police conduct amounted to an illegal search and seizure deserves more treatment. It is well settled that the fourth amendment embodies a comprehensive right of privacy against unwarranted governmental intrusions. See Cooley, Constitutional Limitations 623 (8th ed. 1927); Griswold, The Fifth Amendment Today 1 (1955); Lasson, The History and Development of the Fourth Amendment to the United States Constitution 79 (1937); Beaney, The Constitutional Right to Privacy in the Supreme Court, 1962 Supreme Court Rev. 212; Symposium on the Griswold Case and the Right to Privacy, 64 Mich.L.Rev. 197 (1965). In determining whether the search is reasonable, courts must strike a balance between this right to privacy and the government's need to secure evidence of guilt. Numerous courts have solved the problem of searching residences and outlying buildings by resort to the common-law concept of the "curtilage." United States v. Mullin, 4th Cir. 1964, 329 F.2d 295; Weaver v. United States, 5th Cir. 1961, 295 F.2d 360; Polk v. United States, 9th Cir. 1961, 291 F.2d 230; Hobson v. United States, 8th Cir. 1955, 226 F.2d 890; Walker v. United States, 5th Cir. 1955, 225 F.2d 447; Roberson v. United States, 6th Cir. 1948, 165 F.2d 752. Apparently this concept helps set the fourth-amendment boundaries which the police cannot invade without probable cause. The dis-

trict court held that the officer's conduct in trespassing on the property and peering in the window amounted to an invasion of the curtilage without probable cause to arrest or search. A more relevant issue also considered by the district court enables this Court to avoid the fictional question of where the curtilage begins and ends.

▮ The paramount reason for affirmance in this case is that the conduct of Officer Gann constituted an illegal search because his three trips to the window were made at a time when he lacked probable cause to think that narcotics were possessed in the home. The State's objection to this conclusion is that since the eye cannot commit the trespass condemned by the fourth amendment, Gann's observations cannot constitute a search. This contention is foreclosed by Brock v. United States, 5th Cir. 1955, 223 F.2d 681. There we held that standing on a man's premises and peering in his window constituted a search and in that case violated his "right to be let alone" as guaranteed by the fourth amendment. Id. at 685. See Davis v. United States, 9th Cir. 1964, 327 F.2d 301; People of State of California v. Hurst, 9th Cir. 1963, 325 F.2d 891; United States v. Lewis, S.D.N.Y.1964, 227 F.Supp. 433. These decisions conform to the purposes of the right of privacy [1] and correspond to the growth of that right.[2] The landmark decision of Boyd v. United States, 1886, 116 U.S. 616, 6 S.Ct. 524, 29 L.Ed. 746, first articulated the doctrine that the essence of the fourth amendment was protection

---

1. The makers of our Constitution undertook to secure conditions favorable to the pursuit of happiness. They recognized the significance of man's spiritual nature, of his feeling and of his intellect. * * * They sought to protect Americans in their beliefs, their thoughts, their emotions and their sensations. They conferred, as against the government, the right to be let alone—the most comprehensive of rights and the right most valued by civilized men. Olmstead v. United States, 277 U.S. 438, 478, 48 S.Ct. 564, 572, 72 L.Ed. 944 (Brandeis, J. dissenting).

2. See generally Corwin, Liberty Against Government 1 (1948); Corwin, The "Higher Law" Background of American Constitutional Law, 42 Harv.L.Rev. 149 (1928); Dykstra, The Right Most Valued by Civilized Man, 6 Utah L.Rev. 305 (1959); Izer, Intrusions on Solitude: Herein of Civil Rights and Civil Wrongs, 21 Law in Transition 63 (1961); Griswold, The Right to Be Let Alone, 55 Nw. U.L.Rev. 216 (1960); Kaplan, Search and Seizure: A No-Man's Land in the Criminal Law, 49 Calif.L.Rev. 474 (1961).

against arbitrary intrusions into the privacies of life. The Supreme Court recently reaffirmed this principle in Warden, Maryland Penitentiary v. Hayden, 1967, 387 U.S. 294, 87 S.Ct. 1642, 18 L.Ed.2d 782, and went on to note that the Court has to an increasing extent discarded fictional property concepts in resolving the issues of privacy and public security. See Barrett, Personal Rights, Property Rights, and the Fourth Amendment, 1960 Supreme Court Rev. 46; Comment, The Mere Evidence Rule: Doctrine or Dogma?, 45 Texas L.Rev. 526, 554 (1967). Thus the existence of a search does not depend on a trespass under local property law. See Hayden, supra, 87 S.Ct. at 1648. All that is necessary is an "actual intrusion into a constitutionally protected area." Katz v. United States, 1967, 389 U.S. 347, 88 S.Ct. 507, 19 L.Ed.2d 576, Berger v. State of New York, 1967, 388 U.S. 41, 87 S.Ct. 1873, 1880, 18 L.Ed.2d 1040. *Brock* teaches that this "actual intrusion" can be accomplished visually; however, *Brock* does not hold that officers cannot accomplish their search by looking in windows, but only that they must have probable cause to think that a crime is being or has been committed before they do so. In this case, the police did not have probable cause to believe that narcotics were present in the Selvera home: The search warrant was invalid under the *Aguilar* doctrine; there was nothing to suggest that the informer, who stated to Gann that narcotics were being peddled at Selvera's home and that he had seen Selvera retrieve a small package from the alley, was reliable or that his tale was credible;[3] finally, the fact that Selvera had admitted that he was a narcotics user did not provide probable cause for believing that the narcotics were present in his house on

the night of the search. These factors coupled with Gann's numerous trips to the window, confirm that the police conduct in this case amounted to the sort of fishing expedition for evidence that the fourth amendment was designed to eliminate. Note, 45 Neb.L.Rev. 148, 153 (1966). The aversion to the exploratory search has deep roots, Entick v. Carrington, 19 Howell, St.Tr. 1030 (Ct. C.P. 1765), and the fourth-amendment condemnation of this practice refutes the State's circular argument that the fruits of the search can justify the arrest or that the search can be justified by the subsequent arrest. See People of State of California v. Hurst, *supra* at 897.

Since the foregoing consideration constitutes a sufficient ground for affirmance, the other contentions of the parties need not be reached.

Affirmed.

---

**3.** This conclusion is based on the fact that Gann never revealed the nature or source of his information that "narcotics were being peddled there." The State has admitted that the information that Selvera had retrieved a small package from the alley was of "unknown reliability." When it has not been shown by the State that the hearsay is credible and there is no detailing of the underlying circumstances upon which the belief is based, the informer's information will not support a finding of probable cause to arrest or search. Collins v. Beto, 5th Cir. 1965, 348 F.2d 823.