Commonwealth, Appellant, *v.* Hernley.

Argued November 11, 1969.   Before WRIGHT, P. J.,
WATKINS, MONTGOMERY, JACOBS, HOFFMAN, SPAULDING,
and CERCONE, JJ.

*Robert F. Banks,* Assistant District Attorney, with
him *Edward M. Bell,* District Attorney, for Common-
wealth, appellant.

*Herman M. Rodgers,* with him *Rodgers, Marks and
Marks,* for appellees.

OPINION BY JACOBS, J., March 19, 1970:

This is an appeal by the Commonwealth from an
order of the court below suppressing all evidence ob-

tained under a search warrant on the grounds that the warrant was issued upon information received as a result of an unconstitutional search and seizure.[1]  Disposition of this case depends entirely on whether the nocturnal observation through the windows of appellees' printshop by an FBI agent while standing on top of a ladder and using binoculars constituted an unreasonable search.  The Commonwealth contends that this observation, if upheld, supports the issuance of the warrant by itself and, therefore, the tangible evidence seized will support its case.  The Commonwealth has conceded that evidence acquired by other police activities prior to the issuance of the warrant and admissions made by some of the appellees when the warrant was executed are inadmissible.  The relevant facts are as follows:

Some time during the fall of 1967, FBI Special Agent Forsythe became aware that football gambling forms were in distribution in Farrell, Pennsylvania. Upon receiving some information, the source and content of which is not made known in the record, Forsythe began surveillance of appellees' printshop.  During the evening of October 16, 1967, Forsythe noticed that the presses inside the shop were operating, but due to the location and size of the windows,[2] he was unable to observe what was being printed from his position off the premises.  In order to remedy this problem, Forsythe mounted a four-foot ladder which he had placed on the railroad tracks abutting appellees' prop-

---

[1] This order effectively terminated the prosecution and the Commonwealth has a right of appeal. *Commonwealth v. Bosurgi,* 411 Pa. 56, 190 A. 2d 304 (1963).

[2] The record establishes that the sills of the windows through which the observation was later made exceeded the height of an average man. Consequently, they precluded an observation of activities within the shop by someone standing on the ground outside the building.

erty, and from a distance of thirty to thirty-five feet observed through a side window, by using binoculars, some "Las Vegas" football parlay sheets, white in color, being run off the press.

Appellees argue that this constituted an illegal search of an area in which they had a reasonable expectation of freedom from governmental visual intrusion. The Commonwealth, on the other hand, contends that, since the appellees left their activities open to view, they may not claim any violation of their rights under the Fourth Amendment. The court below held the search unreasonable on the basis of *Katz v. United States,* 389 U.S. 347 (1967).

Whether the actions of the FBI agent in this case constitute an unreasonable search can only be decided by examining all the surrounding circumstances in light of the Fourth Amendment requirements as interpreted by the relevant case law. See *Ker v. California,* 374 U.S. 23 (1963). This examination amounts to a "balancing of interests between the security of public order by the solution and prevention of crimes, and a person's immunity from police interference into his privacy." *Commonwealth v. Hicks,* 209 Pa. Superior Ct. 1, 4-5, 223 A. 2d 873, 875 (1966). In making this determination, it is essential to keep in mind the basic purpose of the Fourth Amendment to protect the individual's privacy against arbitrary intrusion by the police. *Boyd v. United States,* 116 U.S. 616 (1886); *Wolf v. Colorado,* 338 U.S. 25 (1949); *Camara v. Municipal Ct.,* 387 U.S. 523 (1967).

Viewing the facts of this case, we cannot agree with the court below. A long line of federal court decisions involving window observations have held such to be in violation of the Fourth Amendment where the officers made their surveillance while on the defendant's property. See *Brock v. United States,* 223 F. 2d 681 (5th Cir. 1955); *People v. Hurst,* 325 F. 2d 891 (9th Cir.

180

1963), *rev'd on other grounds,* 381 U.S. 760 (1965); and *State v. Gonzales,* 388 F. 2d 145 (5th Cir. 1968).[3] In contrast, cases such as *People v. Wright,* 41 Ill. 2d 170, 242 N.E. 2d 180 (1968), and *Ponce v. Craven,* 409 F. 2d 621 (9th Cir. 1969), have upheld visual observations where the police, as here, were off the defendant's premises.[4] Further, the fact that the visual observation was made by the use of binoculars has not made it unreasonable. In *Johnson v. State,* 2 Md. App. 300, 234 A. 2d 464 (1967), the court upheld an observation by police officers into the windows of defendant's house by using binoculars while situated in an adjacent house. In *Fullbright v. United States,* 392 F. 2d 432 (10th Cir. 1968), *cert. denied,* 393 U.S. 830 (1968), where the federal agents observed defendants through an open door, the court held that the use of binoculars did not change the admissibility of the information gained. The Supreme Court of the United States, in applying the plain view doctrine when a searchlight had been used in apprehending a rum runner, opined, "Such use of a searchlight is comparable to the use of a marine glass or a field glass. It is not prohibited by the constitution." *United States v. Lee,* 274 U.S. 559, 563 (1927).

The question then is whether the decision in *Katz* requires a different result. There the court held that the attachment of an electronic listening device to the outside of a telephone booth, whereby the police were

---

[3] Although the *Gonzales* case puts great emphasis on the invasion of privacy idea, it appears that the crucial factor involved was the trespass.

[4] Apart from the trespass idea, these rely on the "plain view" doctrine. The basis of this theory was recently expressed in *Harris v. United States,* 390 U.S. 234, 236 (1968), as follows: "It has long been settled that objects falling in the plain view of an officer who has a right to be in the position to have that view are subject to seizure and may be introduced in evidence."

able to record the defendant's conversation while using the telephone within the booth, was an unreasonable search and seizure because it violated the privacy upon which defendant justifiably relied while using the telephone booth. Previous cases holding that electronic surveillance was not unreasonable where no trespass was involved were held to be no longer controlling.

We find that *Katz* does not require a different result for two reasons. In *Desist v. United States*, 394 U.S. 244 (1969), *Katz* was given wholly prospective application insofar as it departed from previous holdings of the Court and was held to apply only to electronic surveillances conducted after December 18, 1967. Thus, even if we felt that the rationale of *Katz* applied to this visual observation we would consider it a distinct departure from the past and hesitate to apply it to this observation which occurred on October 16, 1967. The second, but more significant, reason is that although *Katz* does eliminate the physical intrusion requirement in electronic eavesdropping situations, it also emphasizes the need for a justifiable expectation on the part of the suspect that he is conducting his activity outside the sphere of possible governmental intrusion. Justice HARLAN'S concurring opinion points to a two-fold requirement: That (a) the suspect has "exhibited an actual (subjective) expectation of privacy", and (b) that society can view this expectation as a reasonable one. 389 U.S. at 361. In *Katz,* the suspect entered a phone booth, closed the door and paid the toll, thereby seeking to effectively exclude the listening ear. The Court held that his expectation in this regard was justifiable. Our case presents the situation in which it was incumbent on the suspect to preserve his privacy from visual observation.[5] To do that

---

[5] The court below noted that the Supreme Court in *Katz* found no support for the government in the fact that the suspect was visible through the glass-constructed booth. That finding, however,

the appellees had only to curtain the windows. Absent such obvious action we cannot find that their expectation of privacy was justifiable or reasonable. The law will not shield criminal activity from visual observation when the actor shows such little regard for his privacy.

The order of the lower court insofar as it suppresses statements made by appellees when the search warrant was served is affirmed. In all other respects it is reversed.

CONCURRING OPINION BY HOFFMAN, J.:

I join in reversal because the "reasonable expectation" rule of *Katz v. United States*, 389 U.S. 347, 88 S. Ct. 507 (1967), is applicable only to searches conducted after December 18, 1967. *Desist v. United States*, 394 U.S. 244, 89 S. Ct. 1030 (1969). Prior to that date, the search had to be "trespassory" to be within the protection of the Fourth Amendment. See, e.g., *Olmstead v. United States*, 277 U.S. 438, 48 S. Ct. 564 (1928); *Goldman v. United States*, 316 U.S. 129, 62 S. Ct. 993 (1942); *On Lee v. United States*, 343 U.S. 747, 72 S. Ct. 967 (1952). Since there was no trespass here, I would reverse. I would not decide, however, whether the search conducted violated privacy which appellees reasonably expected to exist.

DISSENTING OPINION BY MONTGOMERY, J.:

I believe that these defendants were subjected to an unreasonable search when the FBI agent used a ladder to obtain a view into their premises, otherwise not available to the public. I strongly believe that to hold otherwise would be to unreasonably restrict the right of our citizens to feel safe in leaving their windows

is not applicable here because in *Katz* it was the "uninvited ear" which was sought to be excluded rather than the "intruding eye."

uncurtained to the skies, free from intrusion by all but the occasional passing airplane or helicopter.

I am not dissuaded from my view by the possible prospective application of the law of *Katz v. United States,* 389 U.S. 347, 88 S. Ct. 507, 19 L. Ed. 2d 576 (1967), which was decided after the incident leading to the arrest of these defendants, since I believe that that case is inapplicable to the facts of this case. Instead, I find *Silverman v. United States,* 365 U.S. 505, 81 S. Ct. 679, 5 L. Ed. 2d 734 (1961), analogous. Therein an unauthorized physical penetration (by a "spike mike") into the premises occupied by the defendants was disallowed. In my opinion, it only logically follows that the unnatural physical penetration into the normal line of sight occupied by a person also should be disallowed. Such a principle is entirely different from that of *Katz v. United States,* supra, which would, if extended from the auditory into the optical sphere, outlaw hidden movie or television cameras close to the unsuspecting citizen.

Therefore, I respectfully dissent.