421 A.2d 1086

**COMMONWEALTH of Pennsylvania**

v.

**John F. FINNEGAN, Appellant.**

Superior Court of Pennsylvania.

Submitted April 16, 1980.

Filed Sept. 26, 1980.

Petition for Allowance of Appeal Denied Feb. 26, 1981.

John H. Corbett, Jr., Pittsburgh, for appellant.

Charles W. Johns, Assistant District Attorney, Pittsburgh, for Commonwealth, appellee.

588

Before PRICE, BROSKY, and MONTGOMERY, JJ.

PRICE, Judge:

This appeal is from the judgments of sentence entered in a consolidated trial in which appellant was convicted of four counts of promoting prostitution, and single counts of resisting arrest and criminal conspiracy.

The events giving rise to the charges arose out of two separate incidents. Stated succinctly, the pertinent facts are as follows. On January 31, 1978, State Police Trooper Louis Gentile began an investigation of an advertisement appearing in a Pittsburgh newspaper which stated, "Anna's Health Club, membership, 371–5440." Trooper Gentile had been informed by various sources that a prostitution ring was being conducted in the Pittsburgh area under the guise of Anna's Health Club. The trooper telephoned the number and informed the party at the other end (appellant) that his name was Louis Finelli and that he was interested in the advertisement. The trooper was instructed to proceed to a gasoline station on Rodi Road, Penn Hills, Allegheny County and to call again from the public telephone located at the station. The trooper did as instructed, and the telephone was again answered by the same man who identified himself as "Tony." The man inquired as to the number at the public telephone, and upon being assured that the trooper was calling from the phone at the gasoline station, instructed the trooper to drive to a parking lot two miles from the station located next to a building at address 435 Rodi Road. The trooper complied with the directions and after waiting in the parking lot for several minutes observed appellant exit the building at 435 Rodi Road and enter the trooper's automobile. Trooper Gentile was informed that membership in the club was $10.00 which entitled him to service at 435 Rodi Road at a rate of $40.00 and for "outcalls" at a fee of $70.00. The trooper then inquired as to the nature of the services and explained that he was a businessman and that many of the services would be for clients and that he did not want to be embarrassed by having his clients "walk away with a

massage." (N.T. 20). Appellant assured him that there was no massage involved and described the type of sexual services that would be provided. After receiving $10.00 from the trooper, appellant inquired as to his first name and date of birth, recorded the data in a notebook and instructed him to use only this information when requesting service.

On February 6, 1978, Trooper Gentile again called the telephone number and spoke with appellant. The trooper indicated that he wished to receive service for himself at the Rodi Road address and an "outcall" for a business client, both services to be performed the following day. Appellant agreed, and instructed the trooper to be at the Rodi Road address at 2:00 p. m.

On February 7, 1978, Trooper Gentile arrived on time for his scheduled appointment. The trooper was met at the door by a female and escorted into the living room where appellant was seated. Appellant informed the trooper that the total price for both services was $110, and instructed him to place that amount on a nearby coffee table. In response to an inquiry, appellant stated that his female companion would service the trooper and would then proceed to a nearby motel to fulfill the "outcall" for the trooper's business client. At that time, the female started toward the stairway to go upstairs where the bedrooms were located. The trooper then identified himself, informed both appellant and the female companion that they were under arrest, and after a struggle with appellant, summoned several backup surveillance troopers. Appellant was subsequently convicted under criminal information CC7800913A of three counts of promoting prostitution (18 Pa.C.S. § 5902(b)(1), (4) and (7)) and one count of resisting arrest (18 Pa.C.S. § 5104).

The second incident began on April 4, 1978, when Trooper Gentile observed another advertisement in a Pittsburgh newspaper stating, "Anna's Health Club, membership, out-calls, 371–5440." The trooper placed a call to the number and spoke with a man who identified himself as "Tony". The trooper testified that he recognized the voice from prior experience as that of appellant. Trooper Gentile disguised

his voice and identified himself as Ralph Kubic, a business man interested in an "outcall." Appellant informed him that the price was $80.00, which prompted a response from the trooper that he was not interested in it at that time but would be returning to Pittsburgh and would partake of the services at a later date.

On April 19, 1978, the trooper again placed a call to the number, identified himself as Ralph Kubic, and spoke with appellant. He informed appellant that he was interested in an outcall at his motel for the following day. Appellant agreed and instructed him to call again the next evening at 6:30 p. m. On April 20, 1978, at approximately 6:30 p. m. the trooper secured a room at a local motel and again contacted appellant by dialing the number listed in the advertisement. Upon receiving the call, appellant inquired as to the name of the motel. After receiving this information, he hung up and approximately fifteen minutes later contacted the trooper by calling the motel office and requesting to be connected to the room registered to Ralph Kubic. The trooper then stated that he wanted two girls as outcalls, and was informed that the price would be $160.00 which he should pay to the girls when they arrived at 8:30 p. m.

Trooper Gentile then departed from the motel leaving Trooper Ralph Nevala to maintain surveillance, and proceeded to the Allegheny County Night Court to await a telephone call from Trooper Nevala. At 9:55 p. m. Trooper Nevala contacted him and informed him that a female had arrived at the motel. A search warrant was secured and executed immediately on appellant's premises at 435 Rodi Road. During the search, the troopers recovered a slip of paper on which was written the name "Ralph Kubic," the name and room number of the motel, the time 8:30 and the telephone number of the motel.

Trooper Ralph Nevala also testified at trial that at 9:50 p. m. on April 20, 1978, a female, later identified as Patricia Marshall, came to the room at the motel, identified herself as "Dee Dee," stated that she had been sent by "John," and

inquired if he was "Ralph." After discussing various fees and sexual services, she disrobed and was immediately placed under arrest by the trooper. After being given her *Miranda* warnings, she stated that she shared her fees for outcalls with "John" on an equal basis. Further investigation by Trooper Nevala revealed that Miss Marshall had driven to the motel in a burgundy Chevrolet, license number F80–906.

A third state policeman, Trooper Charles Walper, also testified at trial. He stated that on April 20, 1978, at 6:10 p. m. he began surveillance of appellant's establishment at 435 Rodi Road, and that at 8:55 p. m. on that evening he observed Patricia Marshall arrive at the premises and depart at approximately 9:25 p. m. The trooper also stated that at that time Miss Marshall was driving a burgundy Chevrolet with license number F80–906.

As a result of the incidents on April 20, 1978, appellant was convicted under criminal information CC7802735A with one count of promoting prostitution (18 Pa.C.S. § 5902(b)(5)) and one count of criminal conspiracy (18 Pa.C.S. § 903(a)(1)).

Appellant's first contention on appeal is that the statute punishing prostitution (18 Pa.C.S. § 5902) is unconstitutional because it violates the equal protection clause of the fourteenth amendment of the United States Constitution and the equal rights amendment of the Pennsylvania Constitution.

■ First, appellant argues that 18 Pa.C.S. § 5902 violates the above constitutional provisions because it provides for disproportionate punishment based upon sexual classification between the female prostitute, the male client and the promoter of the prostitute.[1] Unfortunately, appellant errs

1. Under § 5902(a) the prostitute is guilty of a misdemeanor of the third degree, while under § 5902(e) the client is guilty of a summary offense and the promoter is guilty under § 5902(b) of either a felony of the third degree or a misdemeanor of the second degree, depending upon the circumstances of the acts of promoting prostitution.

In its brief, the Commonwealth argues that appellant lacks standing to assert the constitutional issue as it relates to the third party prostitute and client under the doctrine of jus tertii. In the instant

in that the statute does not make a distinction between the various parties based upon a sexual classification and the roles of prostitute, client, and promoter may be played by either females or males. Instead, it is the conduct of the offender rather than his or her gender that provides the statutory basis for the variance in the offense charged and penalty imposed. Thus, the statute is neutral in its classification [2] and does not offend either of the above provisions. *Cf. United States v. Moses*, 339 A.2d 46 (D.C.1975), *cert. denied*, 426 U.S. 920, 96 S.Ct. 2624, 49 L.Ed.2d 373 (1976); *Commonwealth v. Butler*, 458 Pa. 289, 328 A.2d 851 (1974); *Gilman v. Unemployment Compensation Board*, 28 Pa. Cmwlth. 630, 369 A.2d 895 (1977).

Moreover, appellant's second contention regarding the disparity in sentencing between the various parties is equally without merit. Because we have concluded that the statute in question is neutral and not gender–based, we will analyze the legislative classification to determine whether it is founded upon some rational basis for achieving a legitimate governmental interest, *see Eisenstadt v. Baird*, 405 U.S. 438, 72 S.Ct. 1029, 31 L.Ed.2d 349 (1972); *Reed v. Reed*, 404 U.S. 71, 92 S.Ct. 251, 30 L.Ed.2d 225 (1971), rather than being "substantially related" to the achievement of "important

case, however, appellant is not asserting the rights of the prostitute or clients in challenging the lawfulness of the provisions under 18 Pa.C.S. § 5902. Rather, he is asserting his own equal protection and equal rights claims in alleging discrimination in the definitional and sentencing provisions under § 5902(c) as contrasted with the provisions applicable to the prostitute and client.

2. Under 18 Pa.C.S. § 5902(a)
"[A] person is guilty of prostitution; ... if *he or she*: (1) is an inmate of a house of prostitution or otherwise engages in sexual activity as a business ...." (Emphasis added).
While § 5902(e) (patronizing a prostitute) is not as neutral in its provisions and is written in terms of males hiring female prostitutes, we do not believe the provision is so restricted, particularly in light of the Statutory Construction Act, 1 Pa.C.S. § 1902 which provides that in any statute "[w]ords used in the masculine gender shall include the feminine and neuter."
Finally, the section concerning the promoting of a prostitute, 18 Pa.C.S. § 5902(b), provides that the offense may be committed by "[a] person."

governmental objectives," that would be applied to a gender-based statute. *Craig v. Boren*, 429 U.S. 190, 197, 97 S.Ct. 451, 456, 50 L.Ed.2d 397 (1976).

■ In addressing appellant's challenge, we note initially that there is a strong presumption in favor of the constitutionality of statutes, *see School Districts of Deer Lakes and Allegheny County v. Kane*, 463 Pa. 554, 345 A.2d 658 (1975); *Glancey v. Casey*, 447 Pa. 77, 288 A.2d 812 (1972), and " 'the burden rests heavily upon the party seeking to upset legislative action on constitutional grounds . . . .' " *Singer v. Sheppard*, 464 Pa. 387, 393, 346 A.2d 897, 900 (1975), *quoting Milk Control Commission v. Battista*, 413 Pa. 652, 659, 198 A.2d 840, 843 (1964).

■ Applying these standards, we conclude that the sentencing disparity based upon the separate roles played by the prostitute, client and promoter bears a rational relationship to the avowed objective of eliminating this form of crime. Indeed, an analogous dichotomy exists in the penalty provisions of the Controlled Substance, Drug, Device and Cosmetic Act in this Commonwealth, in which a greater penalty is imposed upon the "pusher" or provider of the contraband than upon one who merely purchases or possesses the material. *Compare* Act of April 14, 1972, P.L. 233, § 13(a)(16) *with* § 13(a)(30), 35 P.S. § 780–113(a)(16), (30). Thus, we believe that the legislatively–employed method of punishing the prostitute and promoter as the providers of the sexual services to a greater extent than the client who purchases such services is rationally related to the legitimate purpose of eliminating prostitution and maintenance of the public health, safety, morals and general welfare. *Cf. Paris Adult Theatre v. Slaton*, 413 U.S. 49, 93 S.Ct. 2628, 37 L.Ed.2d 446 (1973); *State v. Hicks*, 360 A.2d 150 (Del.Super. Ct.1976), *aff'd.*, 373 A.2d 205 (Del.1977); *United States v. Moses, supra.*

■ Finally, appellant argues that objective evidence establishes a pattern of selective enforcement of § 5902 by

police officials.[3] Appellant cites various statistics to establish that the incidence of arrest of prostitutes is far greater than the arrest rate for clients, and that practically all of the prostitutes actually arrested are female, thus showing a gender–based pattern of selective enforcement. Unfortunately, appellant has failed to establish whether these disparities are occasioned by the employment of reasonable police methods, such as using "decoy" clients to effect the arrest of prostitutes, as opposed to the safety and entrapment problems occasioned by employing "decoy" prostitutes to effect the arrest of potential clients. *See United States v. Wilson*, 342 A.2d 27 (D.C.1975). Moreover, appellant's assertion that statistics show nearly 100 per cent of the prostitutes arrested are female thus evidencing a pattern of selective enforcement is without merit absent a showing of the rates of participation by females and males in this particular form of crime. The disparity in rates of arrest may arise from the percentage of participation by females as opposed to males rather than from gender–based selective enforcement. Absent additional evidence, appellant has failed to establish "an element of intentional or purposeful discrimination." *Snowden v. Hughes*, 321 U.S. 1, 8, 64 S.Ct. 397, 401, 88 L.Ed. 497 (1944).

■ Appellant next contends that the initial telephone calls placed by Trooper Gentile on January 31, 1978, and April 4, 1978, constituted illegal searches within the meaning of the fourth amendment. We disagree.

The fourth amendment to the Constitution seeks to prevent "unreasonable searches and seizures" and protects a person from governmental intrusions into those areas in

---

**3.** Because appellant's challenge relates solely to the incidence of arrest of prostitutes under § 5902(a) versus clients under § 5902(e), he technically lacks standing to contest the manner of enforcement, since he was not charged with violation of either of these two provisions. *See Commonwealth v. Hughes*, 468 Pa. 502, 364 A.2d 306 (1976). Nevertheless, because the "limitations on a litigant's assertion of jus tertii are not constitutionally mandated, but rather stem from a statutory 'rule of self–restraint.' " *Craig v. Boren, supra* at 193, 97 S.Ct. at 454, we will address the merits of appellant's contentions.

which he displays a reasonable expectation of privacy. *See United States v. Chadwick*, 433 U.S. 1, 97 S.Ct. 2476, 53 L.Ed.2d 538 (1977); *Katz v. United States*, 389 U.S. 347, 88 S.Ct. 507, 19 L.Ed.2d 576 (1967); *Silverman v. United States*, 365 U.S. 505, 81 S.Ct. 679, 5 L.Ed.2d 734 (1961).

"In order for this constitutional protection to attach, however, the individual must harbor a *reasonable* and justifiable expectation of privacy within the area in question. [citations omitted] The reasonableness of one's expectations will necessarily turn on the facts in the individual case evincing the strength of that belief and the measures taken to ensure privacy." *Commonwealth v. Weimer*, 262 Pa.Super. 69, 74, 396 A.2d 649, 651 (1978) (emphasis in original).

As stated in the concurring opinion of Mr. Justice Harlan in *Katz v. United States, supra*, 389 U.S. at 361, 88 S.Ct. at 516, there is a twofold requirement for any fourth amendment protection. "[F]irst that a person have exhibited an actual (subjective) expectation of privacy and, second, that the expectation be one that society is prepared to recognize as 'reasonable.'"

Viewing the facts of the instant case, we conclude that the investigative technique employed by Trooper Gentile did not result in an unreasonable intrusion into appellant's expected area of privacy. In this case, appellant caused an advertisement to be placed in a major Pittsburgh newspaper inviting the public to respond by telephone. The fact that the public, in the guise of an undercover police agent,[4] accepted that invitation cannot now be construed as an unreasonable invasion of an area in which appellant manifested a reasonable expectation of privacy. In so holding we note a parallel to an earlier decision by this court in *Commonwealth v. Hernley*, 216 Pa.Super. 177, 263 A.2d 904 (1970), *cert. denied*, 401 U.S. 914, 91 S.Ct. 886, 27 L.Ed.2d 813

4. The fact that appellant erred in his misplaced trust as to the identity of the undercover agent does not render the inquiry by the trooper constitutionally offensive. *See Hoffa v. United States*, 385 U.S. 293, 87 S.Ct. 408, 17 L.Ed.2d 374 (1966); *Lewis v. United States*, 385 U.S. 206, 87 S.Ct. 424, 17 L.Ed.2d 312 (1966).

(1971), in which FBI agents observed appellant engage in gambling activities through an uncovered window. In concluding that the intrusion did not constitute an unreasonable search for the reason that appellant did not display a subjective expectation of privacy, we relied upon the rationale embodied in the following language from *Katz v. United States, supra,* 389 U.S. at 351, 88 S.Ct. at 511, "What a person knowingly exposes to the public, even in his home or office, is not a subject of Fourth Amendment protection." *See also Commonwealth v. Williams,* 262 Pa.Super. 508, 396 A.2d 1286 (1978); *Commonwealth v. Busfield,* 242 Pa.Super. 194, 363 A.2d 1227 (1976). Thus, like the defendant in *Hernley,* appellant did not display a reasonable expectation that he would retain as private the information obtained by police through their undercover techniques, and accordingly, we hold that the activity by Trooper Gentile was not an unreasonable search within the fourth amendment prohibition.

Appellant next contends that the trial court erred in consolidating the two cases for trial in one proceeding.

Generally, consolidation of informations is a matter within the sound discretion of the trial judge, whose decision will not be reversed absent an abuse of discretion or in cases of clear prejudice and injustice to the accused. *See Commonwealth v. Hill,* 479 Pa. 346, 388 A.2d 689 (1978); *Commonwealth v. Vickers,* 260 Pa.Super. 469, 394 A.2d 1022 (1978).

"The test of whether consolidation is proper is related to the test of whether evidence of one crime may be admitted at the trial for another. The present rule in Pennsylvania is that consolidation is proper (*i. e.,* the denial of a motion for severance is not an abuse of discretion) if (1) the facts and elements of the two crimes are easily separable in the minds of a jury; and (2) the crimes are such that the fact of the commission of each crime would be admissible as evidence in a separate trial for the other." *Commonwealth v. Terrell,* 234 Pa.Super. 325, 328, 339 A.2d 112, 114 (1975).

*See Commonwealth v. Vickers, supra; Commonwealth v. Jones,* 242 Pa.Super. 303, 363 A.2d 1281 (1976).

In the instant case, we believe that the testimony relating to each incident was not unduly complicated and the jury could have easily separated the facts relating to the incident on February 7, 1978, at appellant's establishment on Rodi Road from the April 20, 1978 transaction at the motel. Moreover, as noted by the trial court, the second portion of the *Terrell* test has also been established since the transactions relating to Anna's Health Club proved a "common scheme, plan, or design involving incidents so related to each other that proof of one tends to prove the others," and thus, evidence of one crime would have been admissible in a separate trial for the other. *Commonwealth v. Jones, supra* 242 Pa.Super. at 308, 363 A.2d at 1283. Finally, we also conclude that consolidation was properly ordered because evidence of the February 7, 1978 incident would have been admissible at a separate trial on the April 10, 1978 transaction to establish a foundation for Trooper Gentile's recognition of appellant's voice when he called the number for Anna's Health Club during the second transaction.

Appellant next contends that the trial court erred in permitting Trooper Gentile to testify concerning appellant's statements without first requiring independent proof of the corpus delicti for the crime of promoting prostitution. Although artfully presented, we find appellant's contention to be without merit. The requirement for independent proof of the corpus delicti applies only in the situation in which the defendant's confession admitting the crime is offered into evidence. *See, e. g., Commonwealth v. Tallon,* 478 Pa. 468, 387 A.2d 77 (1978); *Commonwealth v. Moore,* 466 Pa. 510, 353 A.2d 808 (1976); *Commonwealth v. Steward,* 263 Pa.Super. 191, 397 A.2d 812 (1979). The rationale for this rule was aptly stated in *Commonwealth v. Turza,* 340 Pa. 128, 134, 16 A.2d 401, 404 (1940):

"The grounds on which the rule rests are the hasty and unguarded character which is often attached to confessions and admissions and the consequent danger of a

conviction where no crime has in fact been committed
. . . ."

See Commonwealth v. Moore, supra; Commonwealth v. Ware, 459 Pa. 334, 329 A.2d 258 (1974). The rule and its underlying rationale are not applicable to the instant case in which the statements attributed to appellant are not tantamount to a confession. Under these circumstances, independent proof of the corpus delicti is not a condition precedent to the admission into evidence of appellant's statements.

Appellant's final contention [5] is that the evidence presented was insufficient to support the conviction for conspiracy to promote prostitution.

Under 18 Pa.C.S. § 903(a)(1):

"[a] person is guilty of conspiracy with another person or persons to commit a crime if with the intent of promoting or facilitating its commission he:

(1) agrees with such other person or persons that they or one or more of them will engage in conduct which constitutes such crime or an attempt or solicitation to commit such crime . . . ."

Another requirement under 18 Pa.C.S. § 903(e) is that during any prosecution, the Commonwealth must prove the commission of an overt act in furtherance of the conspiracy. Appellant contends that the evidence was insufficient because it failed to establish both the existence of a conspiratorial scheme and an overt act in furtherance of the crime. We disagree.

**5.** Appellant also presents two assignments relating to alleged errors by the court in its charge to the jury. First, he contends that the court erred in not charging the jury on the defense of entrapment. We find this contention without merit because appellant's defense at trial was a total repudiation of any criminal activity and he did not assert the defense of entrapment at trial nor did he object to the court's failure to charge the jury on that defense. Second, appellant contends that the court erred in charging the jury that his interest in the outcome of the case may be considered by the jury in assessing his credibility. After review, we find no error in the court's charge. See Commonwealth v. Dolny, 235 Pa.Super. 241, 342 A.2d 399 (1975).

Although a common agreement or understanding is at the heart of any conspiracy, it is generally difficult to prove an explicit or formal agreement. Thus, like other elements, the conspiracy may be proven by circumstantial evidence, that is, by examining the relations, conduct, circumstances and overt acts by the alleged co–conspirators. *See Commonwealth v. Dolfi*, 483 Pa. 266, 396 A.2d 635 (1979); *Commonwealth v. Roux*, 465 Pa. 482, 350 A.2d 867 (1976). In the instant case, the evidence was sufficient to prove that appellant entered into a conspiratorial scheme with Patricia Marshall arising out of the incident on April 20, 1978. The testimony established that after Trooper Gentile placed a telephone call to appellant requesting sexual services at a motel, Miss Marshall arrived at appellant's establishment, departed shortly thereafter and arrived at the motel stating that she had been sent by "John" to fulfill the request. From this statement of facts, the jury could reasonably infer that appellant and Miss Marshall conspired to commit the crime of prostitution. Moreover, the activities by Miss Marshall in arriving at the motel and disrobing in preparation for the sexual act clearly satisfy the overt act requirement in furtherance of the conspiracy.

The judgments in the trial court are affirmed.